# TAYLOR *v.* KENTUCKY

No. 77–5549. Argued March 27, 1978—Decided May 30, 1978

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Stewart, White, Marshall, and Blackmun, JJ., joined. Brennan, J., filed a concurring statement, *post,* p. 490. Stevens, J., filed a dissenting opinion, in which Rehnquist, J., joined, *post,* p. 491.

*J. Vincent Aprile II* argued the cause and filed briefs for petitioner.

*Guy C. Shearer,* Assistant Attorney General of Kentucky, argued the cause for respondent. With him on the brief were *Robert F. Stephens,* Attorney General, *Robert L. Chenoweth,* Assistant Attorney General, and *James M. Ringo,* Assistant Deputy Attorney General.

Mr. Justice Powell delivered the opinion of the Court.

Only two Terms ago, this Court observed that the "presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle* v. *Williams,* 425 U. S. 501, 503 (1976). In this felony case, the trial court instructed the jury as to the prosecution's burden of proof beyond a reasonable doubt, but refused petitioner's timely request for instructions on the presumption of innocence and the indictment's lack of evidentiary value. We are asked to decide whether the Due Process Clause of the Fourteenth Amendment requires that either or both instructions be given upon timely defense motions.

I

Petitioner was tried for robbery in 1976, allegedly having forced his way into the home of James Maddox and stolen a house key and a billfold containing $10 to $15. During *voir*

*dire* of the jury, defense counsel questioned the panel about their understanding of the presumption of innocence,[1] the burden of proof beyond a reasonable doubt,[2] and the fact that an indictment is not evidence.[3] The prosecutor then read the indictment to the jury.[4]

The Commonwealth's only witness was Maddox. He testified that he had known petitioner for several years and had entertained petitioner at his home on several occasions. According to Maddox, petitioner and a friend knocked on his door on the evening of February 16, 1976, asking to be admitted. Maddox refused, saying he had to go to bed. The two left, but returned 15 minutes later. They forced their way in, hit Maddox over the head, and fled with his billfold and house key, which were never recovered.

Petitioner then took the stand as the only witness for the defense. He admitted having been at Maddox's home on other occasions, but denied going there on February 16 or participating in the robbery. He stated that he had spent that night with two friends sitting in a parked car, watching a rainstorm and a power failure. Defense counsel requested the trial court to instruct the jury that "[t]he law presumes a defendant to be innocent of a crime," [5] and that the indict-

---

[1] App. 19, 21.

[2] *Id.,* at 19–21.

[3] *Id.,* at 17.

[4] *Id.,* at 23.

[5] Petitioner's requested instruction on this point read as follows:

"The law presumes a defendant to be innocent of a crime. Thus a defendant, although accused, begins the trial with a 'clean slate.' That is, with no evidence against him. The law permits nothing but legal evidence presented before a jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless you are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case." *Id.,* at 53.

This instruction is nearly identical to one contained in 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 11.14, p. 310 (3d ed.

ment, previously read to the jury, was not evidence to be considered against the defendant.[6] The court declined to give either instruction, and did not convey their substance in its charge to the jury. It did instruct the jury as to the Commonwealth's burden of proving petitioner's guilt beyond a reasonable doubt.[7] Petitioner was found guilty and sentenced to five years of imprisonment.

---

1977). See also *United States* v. *Alston,* 179 U. S. App. D. C. 129, 132–133, 551 F. 2d 315, 318–319 (1976); *United States* v. *Cummings,* 468 F. 2d 274, 280 (CA9 1972).

[6] Petitioner's proposed instruction on this point read as follows:

"The jury is instructed that an indictment is in no way any evidence against the defendant and no adverse inference can be drawn against the defendant from a finding of the indictment. The indictment is merely a written accusation charging the defendant with the commission of a crime. It has no probative force and carries with it no implication of guilt." App. 53.

[7] The trial court's instructions, in their entirety, were as follows:

"All right. These are your instructions as to the law applicable to the facts you've heard in evidence from the witness stand in this case.

"Number one, you will find the defendant guilty under this instruction if and only if you believe from the evidence beyond a reasonable doubt all of the following: A. That in this county on or about February 16, 1976 and before the finding of the indictment herein, he the defendant stole a sum of money and a house key from James Maddox, 249 Rosewood, Frankfort, Kentucky; and B. in the course of so doing he used physical force on James Maddox. If you find the defendant guilty under this instruction you will fix his punishment at confinement in the penitentiary for not less than five nor more than ten years in your discretion.

"Number two, if upon the whole case you have a reasonable doubt as to the defendant's guilt you will find him not guilty. The term 'reasonable doubt' as used in these instructions means a substantial doubt, a real doubt, in that you must ask yourself not whether a better case might have been proved but whether after hearing all the evidence you actually doubt that the defendant is guilty.

"Number three, the verdict of the jury must be unanimous and be signed by one of you as foreman. You may use the form provided at the end of these instructions for writing your verdict.

"There is appended to these instructions a form with alternate verdicts,

482

The Kentucky Court of Appeals affirmed, one judge dissenting. 551 S. W. 2d 813 (1977). Petitioner argued [8]—and the Commonwealth denied [9]—that he was entitled as a matter of due process under the Fourteenth Amendment to instructions that he was presumed to be innocent [10] and that his indictment was not evidence of guilt. Both sides briefed federal decisions at some length. Nevertheless, the Court of Appeals rejected petitioner's presumption-of-innocence contention by

---

one of which you will use: A. We the jury find the defendant not guilty; B. We the jury find the defendant guilty under instruction number one and fix his punishment at blank years in the penitentiary." *Id.*, at 40–41.

[8] *E. g.*, 3 Record 15, 86–87.

[9] *E. g.*, *id.*, at 56.

[10] Although the Commonwealth does not challenge our jurisdiction to entertain petitioner's claims, we have examined the record and satisfied ourselves that jurisdiction exists. Petitioner's contemporaneous objection to the refusal of his request for an instruction on the presumption of innocence invoked "fundamental principle[s] of judicial fair play." App. 51. This should have sufficed to alert the trial judge to petitioner's reliance on due process principles. And in the face of petitioner's exclusive, explicit reliance on the Fourteenth Amendment in the Kentucky Court of Appeals, the Commonwealth has not argued that he has forfeited his right to raise federal claims.

The short opinion of the Kentucky Court of Appeals did not discuss federal decisions, relying instead on Kentucky authority. 551 S. W. 2d, at 813–814. This reliance on state law apparently was due to the fact that the highest court of Kentucky settled the issue for that State almost 50 years ago. See, *e. g.*, *Mink* v. *Commonwealth*, 228 Ky. 674, 15 S. W. 2d 463 (1929). By way of contrast, the Court of Appeals quite explicitly refused to consider petitioner's argument that he was prejudiced by improper prosecutorial comments, on the ground that petitioner's failure to make a contemporaneous objection operated as a bar to appellate review. Thus, the Court of Appeals clearly denoted the one issue it refused to consider because of a procedural default. In view of both petitioner's contemporaneous objection to the failure to give the presumption-of-innocence charge, and the Kentucky Court of Appeals' apparent consideration of petitioner's federal claim, we will not strain the record in an effort to divest petitioner of his federal forum at this late date. See *Cicenia* v. *Lagay*, 357 U. S. 504, 507–508, n. 2 (1958).

citing Kentucky case law for the proposition "that as long as the trial court instructs the jury on reasonable doubt an instruction on the presumption of innocence is not necessary." *Id.*, at 814. Without citing any authority, the court also declared that there was no merit in the position "that failure to give . . . an instruction [on the indictment's lack of evidentiary value] denies the defendant due process of the law." *Ibid.* Because petitioner had not made a contemporaneous objection, the court refused to consider petitioner's additional contention that the prosecutor's closing argument had been improper.[11] The Supreme Court of Kentucky denied discretionary review, and we granted certiorari, 434 U. S. 964 (1977). We now reverse.

## II

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States,* 156 U. S. 432, 453 (1895). The *Coffin* Court traced the venerable history of the presumption from Deuteronomy through Roman law, English common law, and the common law of the United States. While *Coffin* held that the presumption of innocence and the equally fundamental principle that the prosecution bears the burden of proof beyond a reasonable doubt were logically separate and distinct, *id.*, at 458–461, sharp scholarly criticism demonstrated the error of that view, see, *e. g.*, J. Thayer, A Preliminary Treatise on Evidence 551–576 (1898) (hereafter Thayer); 9 J. Wigmore, Evidence § 2511 (3d ed. 1940) (hereafter Wigmore); C. McCormick, Evidence 805–806 (2d ed. 1972) (hereafter McCormick).[12]

---

[11] The Kentucky court remanded for resentencing because of the trial court's failure to order a statutorily required presentencing investigation. 551 S. W. 2d, at 814.

[12] The *Coffin* Court viewed the presumption of innocence as "an instrument of proof created by the law in favor of one accused, whereby his

Nevertheless, these same scholars advise against abandoning the instruction on the presumption of innocence, even when a complete explanation of the burden of proof beyond a reasonable doubt is provided. Thayer 571–572; Wigmore 407; McCormick 806. See also ALI, Model Penal Code § 1.12 (1) (Proposed Off. Draft 1962). This admonition derives from a perceived salutary effect upon lay jurors. While the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of innocence. Wigmore described this effect as follows:

"[I]n a criminal case the term [presumption of inno-

innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." 156 U. S., at 459. As actual "evidence in favor of the accused," *id.*, at 460, it was distinguished from the reasonable-doubt standard, which merely described "the condition of mind produced by the proof resulting from the evidence in the cause." *Ibid.* Professor Thayer ably demonstrated the error of this distinction, pointing out that the so-called "presumption" is not evidence—not even an inference drawn from a fact in evidence—but instead is a way of describing the prosecution's duty both to produce evidence of guilt and to convince the jury beyond a reasonable doubt. Thayer 560–563. Shortly after the appearance of Thayer's criticism, the Court, in a case in which the presumption-of-innocence instruction was given, retreated from its conclusion that the presumption of innocence is evidence to be weighed by the jury. See *Agnew* v. *United States,* 165 U. S. 36, 51–52 (1897).

It is now generally recognized that the "presumption of innocence" is an inaccurate, shorthand description of the right of the accused to "remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion\ *i. e.,* to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it." Wigmore 407. The principal inaccuracy is the fact that it is not technically a "presumption"—a mandatory inference drawn from a fact in evidence. Instead, it is better characterized as an "assumption" that is indulged in the absence of contrary evidence. *Carr* v. *State,* 192 Miss. 152, 156, 4 So. 2d 887, 888 (1941); accord, McCormick 806.

cence] does convey a special and perhaps useful hint over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence, i. e.,* no surmises based on the present situation of the accused. This caution is indeed particularly needed in criminal cases." Wigmore 407.

This Court has declared that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. See, *e. g., Estelle* v. *Williams,* 425 U. S. 501 (1976). And it long has been recognized that an instruction on the presumption is one way of impressing upon the jury the importance of that right. See, *e. g., United States* v. *Thaxton,* 483 F. 2d 1071, 1073 (CA5 1973); *Reynolds* v. *United States,* 238 F. 2d 460, 463, and n. 4 (CA9 1956); *People* v. *Hill,* 182 Colo. 253, 257–258, 512 P. 2d 257, 259 (1973); *Carr* v. *State,* 192 Miss. 152, 157, 4 So. 2d 887, 888 (1941); *State* v. *Rivers,* 206 Minn. 85, 93, 287 N. W. 790, 794 (1939); *Commonwealth* v. *Madeiros,* 255 Mass. 304, 316, 151 N. E. 297, 300 (1926); *Reeves* v. *State,* 29 Fla. 527, 542, 10 So. 901, 905 (1892). See also *Holt* v. *United States,* 218 U. S. 245, 253–254 (1910); *Agnew* v. *United States,* 165 U. S. 36, 51–52 (1897). While use of the particular phrase "presumption of innocence"—or any other form of words—may not be constitutionally mandated, the Due Process Clause of the

Fourteenth Amendment must be held to safeguard "against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle* v. *Williams, supra,* at 503. The "purging" effect of an instruction on the presumption of innocence, *Thaxton, supra,* at 1073, simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of proof adduced at trial.[13]

### III

Petitioner argues that in the circumstances of this case, the purging effect of an instruction on the presumption of innocence was essential to a fair trial. He points out that the trial court's instructions were themselves skeletal, placing little emphasis on the prosecution's duty to prove the case beyond a reasonable doubt and none at all on the jury's duty to judge petitioner only on the basis of the testimony heard at trial.

Against the background of the court's rather Spartan instructions, the prosecutor's closing argument ranged far and wide, asking the jury to draw inferences about petitioner's conduct from "facts" not in evidence, but propounded by the prosecutor. For example, he described the reasonable-doubt standard by declaring that petitioner, *"like every other defendant* who's ever been tried who's in the penitentiary or in the reformatory today, has this presumption of innocence until proved guilty beyond a reasonable doubt." App. 45 (emphasis added). This statement linked petitioner to every de-

---

[13] *Estelle* v. *Williams* quite clearly relates the concept of presumption of innocence to the cognate requirements of finding guilt only on the basis of the evidence and beyond a reasonable doubt. 425 U. S., at 503. In this sense, it is possible to interpret the extended historical discussion of the presumption of innocence in *Coffin* v. *United States,* 156 U. S. 432, 453–460 (1895), as supporting the conclusion that an instruction emphasizing for the jury the first of those two requirements is an element of Fourteenth Amendment due process, an essential of a civilized system of criminal procedure. See *Johnson* v. *Louisiana,* 406 U. S. 356, 360 n. 2 (1972).

fendant who turned out to be guilty and was sentenced to imprisonment. It could be viewed as an invitation to the jury to consider petitioner's status as a defendant as evidence tending to prove his guilt. Similarly, in responding to defense counsel's rhetorical query as to the whereabouts of the items stolen from Maddox, the prosecutor declared that "[o]ne of the first things *defendants do after they rip someone off,* they get rid of the evidence as fast and as quickly as they can." *Ibid.* (emphasis added). This statement also implied that all defendants are guilty and invited the jury to consider that proposition in determining petitioner's guilt or innocence.[14]

Additionally, the prosecutor observed in his opening statement that Maddox "took out" a warrant against petitioner and that the grand jury had returned an indictment, which the prosecutor read to the jury. Thus, the jury not only was invited to consider the petitioner's status as a defendant, but also was permitted to draw inferences of guilt from the fact of arrest and indictment.[15] The prosecutor's description of those events was not necessarily improper, but the combination of the skeletal instructions, the possible harmful inferences from the references to the indictment, and the repeated

---

[14] We do not suggest that such prosecutorial comments, standing alone, would rise to the level of reversible error, an issue not raised in this case. But they are relevant to the need for carefully framed instructions designed to assure that the accused be judged only on the evidence.

[15] As noted above, see *supra,* at 480–481, the trial court also refused petitioner's request for an instruction that the indictment was not evidence. This permitted the prosecutor's reference to the indictment to serve as one more extraneous, negative circumstance which may have influenced the jury's deliberations. Because of our conclusion that the cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness in the absence of an instruction as to the presumption of innocence, we do not reach petitioner's further claim that the refusal to instruct that an indictment is not evidence independently constituted reversible error.

488

suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial. That risk was heightened because the trial essentially was a swearing contest between victim and accused.[16]

## IV

Against the need for a presumption-of-innocence instruction, the Commonwealth argues first that such an instruction is not required where, as here, the jury is instructed as to the burden of proof beyond a reasonable doubt. The trial court's truncated discussion of reasonable doubt, however, was hardly a model of clarity. It defined reasonable doubt as "a substantial doubt, a real doubt." *Id.*, at 40. This definition, though perhaps not in itself reversible error, often has been criticized as confusing. See, *e. g.*, *United States* v. *Muckenstrum*, 515 F. 2d 568, 571 (CA5), cert. denied, 423 U. S. 1032 (1975); *United States* v. *Christy*, 444 F. 2d 448, 450 (CA6), cert. denied, 404 U. S. 949 (1971). And even if the instruction on reasonable doubt had been more clearly stated, the Commonwealth's argument ignores both the special purpose of a presumption-of-innocence instruction and the particular need for such an instruction in this case.

The Commonwealth also contends that no additional instructions were required, because defense counsel argued the presumption of innocence in both his opening and closing statements. But arguments of counsel cannot substitute for

---

[16] While we do not necessarily approve of the presumption-of-innocence instruction requested by petitioner, it appears to have been well suited to forestalling the jury's consideration of extraneous matters, that is, to performing the purging function described in Part II, above. The requested instruction noted that petitioner, "although accused, [began] the trial with a 'clean slate.'" It emphasized that the law would permit "nothing but legal evidence presented before a jury to be considered in support of any charge against the accused."

instructions by the court. *United States* v. *Nelson,* 498 F. 2d 1247 (CA5 1974). Petitioner's right to have the jury deliberate solely on the basis of the evidence cannot be permitted to hinge upon a hope that defense counsel will be a more effective advocate for that proposition than the prosecutor will be in implying that extraneous circumstances may be considered. It was the duty of the court to safeguard petitioner's rights, a duty only it could have performed reliably. See *Estelle* v. *Williams,* 425 U. S., at 503.[17]

Finally, the Commonwealth argues that *Howard* v. *Fleming,* 191 U. S. 126 (1903), established that the Fourteenth Amendment does not require instructions on the presumption of innocence. In *Howard,* however, the trial court had instructed the jury to consider only the evidence and the law as received from the court.[18] The argument in *Howard* was not that

---

[17] See ABA Project on Standards for Criminal Justice, Function of the Trial Judge § 1.1 (a) (App. Draft 1972):

"The trial judge has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice. The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his own initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial. The only purpose of a criminal trial is to determine whether the prosecution has established the guilt of the accused as required by law, and the trial judge should not allow the proceedings to be used for any other purpose."

[18] The trial court had given the following instructions:

"Now, gentlemen, in the trial of this cause the court admonishes you to divest yourselves of any possible feeling or prejudice which you might have against the defendants as well as any sympathy that you might entertain for them on account of their misfortune, and try this case upon the law and the evidence as the court has endeavored to lay it down to you. When you do this you have responded to the high responsibilities which rest upon you as jurors. It matters not whether your verdict accords with public sentiment or not. You are supposed to be indifferent to any such influences and for such to influence you would be a failure to perform your duty. I need not say to you that the offense with which the defendants are charged is a grave one under the law, and if guilty they should be

failure to give an explicit instruction on the presumption of innocence raised a danger that the jury might judge defendants on matters other than the evidence. Instead, plaintiffs-in-error relied on *Coffin* for the erroneous proposition that the presumption of innocence is "evidence" to be weighed in the accused's favor. Brief for Appellants in *Howard* v. *Fleming*, O. T. 1903, Nos. 44 and 45, pp. 111–113. The Court had discarded this view some years before. See n. 12, *supra*. Thus, *Howard* held only that the accused is not entitled to an instruction that the presumption of innocence is "evidence." It did not cast doubt upon the additional function of the presumption as an admonition to consider only the evidence actually introduced, since such an instruction had been given.

## V

We hold that on the facts of this case the trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment. The judgment of conviction is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

Mr. Justice Brennan, concurring.

I join the Court's opinion because in reversing petitioner's conviction it reaffirms that "the 'presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice,'" *ante,* at 479, quoting *Estelle* v. *Williams,* 425 U. S. 501, 503 (1976). It follows from this proposition, as is clear from the

---

convicted, but while this is true they are entitled under the constitution and laws of your State to a fair and honest trial at your hands, and I feel sure that you will give them such." Record in *Howard* v. *Fleming,* O. T. 1903, Nos. 44 and 45, p. 120.

Court's opinion, that trial judges should instruct the jury on a criminal defendant's entitlement to a presumption of innocence in all cases where such an instruction is requested.

MR. JUSTICE STEVENS, with whom MR. JUSTICE REHNQUIST joins, dissenting.

In a federal court it is reversible error to refuse a request for a proper instruction on the presumption of innocence. *Coffin* v. *United States,* 156 U. S. 432, 460–461.[1] That is not, however, a sufficient reason for holding that such an instruction is constitutionally required in every criminal trial.[2]

The function of the instruction is to make it clear that the burden of persuasion rests entirely on the prosecutor. The same function is performed by the instruction requiring proof beyond a reasonable doubt.[3] One standard instruction adds emphasis to the other. Neither should be omitted, but an "omission, or an incomplete instruction, is less likely to be prejudical than a misstatement of the law." *Henderson* v. *Kibbe,* 431 U. S. 145, 155. In some cases the omission may be fatal, but the Court wisely avoids a holding that this is always so.

---

[1] Although that decision rested on the erroneous notion that "the presumption of innocence is evidence in favor of the accused," 156 U. S., at 460; cf. J. Thayer, A Preliminary Treatise on Evidence 566–575 (1898), the rule in *Coffin* is surely sound.

[2] "Before a federal court may overturn a conviction resulting from a state trial [on the basis of an error in the instructions to the jury], it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp* v. *Naughten,* 414 U. S. 141, 146.

[3] The instruction may also give the jury a "hint," 9 J. Wigmore, Evidence § 2511 (3d ed. 1940), that arrest, indictment, and arraignment should not count against the accused. But when an instruction on this point is necessary, it should be explicit. An instruction on the presumption of innocence is not an adequate substitute for stating expressly that the indictment is not evidence.

492

In this case the omission did not violate a specific constitutional guarantee, such as the privilege against compulsory self-incrimination.[4] Nor did it deny the defendant his fundamental right to a fair trial. An instruction on reasonable doubt, admittedly brief, was given. The *voir dire* had made clear to each juror the defendant's right to be presumed innocent despite his indictment.[5] The prosecutor's closing argument did not precipitate any objection from defense counsel who listened to it; it may not, therefore, provide the basis for a reversal. Cf. *Estelle* v. *Williams,* 425 U. S. 501, 506–513. Although the Court's appraisal is not unreasonable, for this was by no means a perfect trial, I do not believe that constitutional error was committed. Accordingly, I respectfully dissent.

---

[4] Cf. *Lakeside* v. *Oregon,* 435 U. S. 333, 342 (STEVENS, J., dissenting).

[5] Petitioner's lawyer asked the jurors the following questions:

"You all understand an indictment is only a charge, the initiating paper which brings us here today, and that in and of itself the indictment is no evidence, no way. It's merely a document that gets us here to this stage in the proceedings. Do you understand that's not to be considered as evidence?

.    .    .    .    .

"I'm sure you all will agree to this final question as regards the principle of innocence or reasonable doubt. Do each of you all agree and understand that Mike Taylor as he sits there today is a young man who is presumed to be innocent of the charge of second degree robbery, that this innocence has to be overcome by the Commonwealth to meet a standard of what we call beyond a reasonable doubt and that in the event that at the conclusion of the evidence, you have a reasonable doubt then it is your duty to return a verdict of not guilty. Do each of you understand the principle of innocence, the requirement of reasonable doubt? That reasonable doubt must be removed in order to find a verdict of guilty?

"Do each of you understand that principle and I try to make it as elementary as I can. Lawyers sometimes have a tendency to make things complicated but I hope I made it sufficiently clear.

"I take it by your silence that each of you does understand."