**Michael Lamont SWEATT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 25, 1979.

Discretionary Review Denied Oct. 2, 1979.

Terrence R. Fitzgerald, Deputy Public Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Guy C. Shearer, Asst. Atty. Gen., Frankfort, for appellee.

Before MARTIN, C. J., and REYNOLDS and WILHOIT, JJ.

MARTIN, Chief Judge.

This is an appeal from a Jefferson Circuit Court jury verdict finding the appellant, Michael Lamont Sweatt, guilty of third-degree burglary for which he received a one-year sentence, second-degree arson for which he received a six-year sentence, and second-degree wanton endangerment for which he received a $500 fine. The two questions raised on this appeal are whether appellant was deprived of a fair trial because of the trial court's failure to grant a directed verdict on the wanton endangerment charge, and whether appellant was denied a fair trial because the trial court gave an instruction defining reasonable doubt.

On January 23, 1977 at 5:51 p. m., a fire occurred in a dwelling house located at 2807 Wyandotte Avenue in Louisville, Kentucky. The house was the rented residence of Sharon Morris, a friend of the appellant. When the firemen arrived at the fire, they found no one in the house.

Sergeant Dennis Kangas of the Louisville Fire Department, Arson Squad, investigated the fire with his partner, Sergeant Alex Ahart. The officers arrived at the scene at approximately 6:05 p. m. as the fire was being extinguished. One fire department engine crew extinguished the fire within fifteen (15) minutes of the initial alarm. Damage to the exterior of the structure was minimal and no one was injured as a result of the fire.

Sergeant Kangas qualified as an expert witness. He testified regarding his investigation of the fire and to his conclusion that the fire had started at two separate points, the rear bedroom and the kitchen. The major portion of the fire in the bedroom was confined to one wall. The kitchen fire was confined to an area above the kitchen sink and was apparently started with the curtains catching fire first. Sergeant Kangas testified that in his opinion there could be no natural causes for either of these fires. His investigation further indicated the lower left-hand window pane of the side door to the house had been broken out, with glass fragments being found in the house.

As part of the investigation following the fire, Sergeant Kangas testified that he interviewed several people in the area at the time of the fire. As a result of the information he received in this investigation, an all points bulletin in the City of Louisville was issued for Michael Sweatt. Sergeant Kangas stated that he then went to 312 Cecil Avenue where Michael Sweatt was arrested approximately three hours after the initial fire alarm. At the time of the arrest of Michael Sweatt, photographs were taken of his car. As a result of these photographs, it was determined that the vehicle had been recently operated because of the melting snow on the hood. According to Sergeant Kangas' testimony, it had snowed that night, and all the other cars on the street were covered with snow. He testified that only the hood of Michael Sweatt's car was barren of snow and that his radiator was warm to the touch.

Sharon Morris testified that she and Michael Sweatt had been close friends for approximately five years. She further testified that he was the father of her four-year-old daughter and that at one time they had contemplated purchasing a house and marrying. On the day of the fire Sharon Morris received a call from Michael Sweatt at approximately 5:00 p. m. while she was visiting in her father's house. An argument ensued, and Michael hung up. She further testified that he was aware that she was renting the property where the fire had occurred and that he had in fact visited her on the morning of the fire.

The Commonwealth produced evidence at the trial that neighbors identified Michael as being at the scene of the fire, and he was positively identified as having been near the rear door shortly before the fire. Michael Sweatt took the stand in his own defense and admitted being at the house on the day of the fire but specifically denied having started the fire.

Appellant first argues that he was entitled to a directed verdict on the wanton endangerment charge because the Commonwealth failed to prove that he created a wantonly dangerous situation. The trial court instructed the jury on first- and second-degree wanton endangerment, and the jury found appellant guilty under the second-degree count.

■ In order to establish first-degree wanton endangerment, the actor must have consciously disregarded a substantial and unjustifiable risk that he was creating a danger of death or serious injury to another person, thus manifesting extreme indifference to human life. The two fires in question here did not extend to the exterior of the house and were, in fact, contained within the two rooms. Moreover, the facts show that no one was in the house at the time of the fire. While this is certainly evidence of wanton conduct, it does not appear to rise to the level of conduct manifesting extreme indifference to human life. Extreme wantonness describes conduct such as firing a gun into an occupied automobile. See KRS 508.060, Commentary. Under the circum-

stances of this case, we think the evidence was insufficient to support an instruction on first-degree wanton endangerment. However, the failure of the court to take from the jury the question of first-degree wanton endangerment was not reversible error. The court correctly instructed the jury on second-degree wanton endangerment, and the jury ultimately, and we think properly, found appellant guilty under that charge. KRS 508.070 provides that a person is guilty of second-degree wanton endangerment when he wantonly engages in conduct which creates a substantial danger of physical injury to another person.

■ It is argued that there was insufficient evidence to convict appellant of wanton conduct. As indicated above, an examination of the record persuades us otherwise. Two fires were set in a frame house; the house was a mere twenty feet from houses on either side of it; the fires were set at 6:00 p. m., a time when people are customarily home from work and school and in their homes for dinner; the firemen answering the alarm were certain to be in danger—all evidencing a substantial basis for a second-degree wanton endangerment charge. We hold it was proper in this case for the jury to deliberate the wanton endangerment charge. The ultimate jury decision finding defendant guilty of wanton endangerment in the second degree was supported by the evidence.

Appellant's second argument is that the instruction defining reasonable doubt deprived defendant of a fair trial. The reasonable doubt instruction given under instruction 6 was as follows:

If upon the whole case, you have a reasonable doubt as to the defendant's guilt, you shall find him not guilty. The term "reasonable doubt" as used in these instructions, means a substantial doubt, a real doubt, in that you must ask yourself not whether a better case might have been proven, but whether, after hearing all the evidence, you actually doubt that the defendant is guilty.

Defense counsel objected in chambers to that part of the reasonable doubt instruc-

tion which states "whether a better case might have been proven" and not to the instruction in its entirety.

The trial judge responded that he based his decision to give a reasonable doubt definition on precedent in Kentucky law which allows it. In reading the Supreme Court decision in *Taylor v. Commonwealth,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), we do not believe an instruction defining reasonable doubt has been held unconstitutional in Kentucky. In *Taylor,* the Supreme Court criticized the particular reasonable doubt definition given the jury by the trial court. That court, like the one here, defined reasonable doubt as "a substantial doubt, a real doubt." Although the Supreme Court was careful to point out that such an instruction is hardly a model of clarity, the instruction as given was not condemned to the status of reversible error. In line with the conclusion in *Taylor,* the Supreme Court of Kentucky stated in *Whorton v. Commonwealth,* Ky., 570 S.W.2d 627 (1978), that although it can no longer approve of the reasonable doubt definition, it will refrain from holding inclusion of the definition constitutionally fatal unless and until the highest judicial authority holds it unconstitutional. We shall follow suit and hold that although the trial judge failed to exercise his discretion by giving a vague definition of reasonable doubt, it was nevertheless harmless and did not constitute reversible error under the facts of this case. The record shows, and the briefs of both parties emphasize, that appellant benefitted from an aware jury. Questions were asked by jurors which indicated an understanding of the proceedings before it such that they would not likely abuse the court's definition. Therefore, the definition of reasonable doubt in the instructions to the jury did not deprive defendant of a fair trial.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.