798 F.2d 1413
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry Thomas CANE, Petitioner-Appellant,
v.
Dewey SOWDERS, Superintendent, Kentucky State Reformatory,
Respondent-Appellee.
 No. 85-5670.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1986.
 
 Before ENGEL, KENNEDY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Henry Cane appeals the district court's dismissal of his 28 U.S.C. 5 2254 habeas corpus petition. On March 25, 1976, Cane was convicted of first degree robbery of a Frankfort, Kentucky woman's clothing store and sentenced to fifteen years imprisonment.
 
 
 2
 Cane alleges that he was denied due process of law because, at his trial:
 
 
 3
 (1) the trial judge refused to instruct the jury on the presumption of innocence and the lack of evidentiary value of the indictment;
 
 
 4
 (2) the pretrial and courtroom identification procedures were so impermissibly suggestive as to create a very substantial risk that he was wrongly identified as one of the perpetrators, and
 
 
 5
 (3) the trial judge refused to examine the photographic array, from which Cane was identified by a witness as one of the perpetrators, in order to gauge its suggestiveness.
 
 
 6
 In addition, Cane asserts that if this court should find that he waived his right to challenge the trial judge's failure to examine the photographic array because he did not request an evidentiary hearing, the case should be remanded to the district court for a hearing on cause and prejudice under Wainwright v. Sykes, 433 U.S. 72 (1977). We conclude, for several reasons, that the petitioner's claims are meritless, and we therefore affirm the district court's judgment denying the petition for writ of habeas corpus.
 
 I.
 
 7
 On December 19, 1975, Brown's Clothing Store was robbed by three men dressed in women's clothing. Cane, an acknowledged transvestite, was arrested within thirty-five minutes of the robbery, clad in women's clothing, wearing a coat stolen during the robbery, and driving a car which contained nearly all of the goods taken in the robbery. Another occupant of the car, Glenn Duncan, later pled guilty to the robbery and testified in Cane's defense.
 
 
 8
 There were three eyewitnesses to the robbery: Mrs. Clara Brown, who owned the clothing store; Mrs. Opal Oliver, an employee; and Mrs. Winnie White, a customer who was in the store at the time of the robbery. At the trial, only mrs. Oliver was able to identify Cane as one of the robbers. Mrs. White testified that she paid no attention to the three perpetrators prior to the time they began the robbery. Mrs. Brown testified that three individuals who appeared to be women came into her store. Shortly thereafter, there was a dispute between Mrs. Brown and one of the three over the price of a coat. That person then pulled a knife and knocked Mrs. Brown to the floor. Mrs. Brown testified that her assailant ordered her, Mrs. Oliver and Mrs. White into the washroom.
 
 
 9
 At the trial, the prosecutor showed Mrs. Brown two photographs and stated that they were "stipulated as being the two, two of the persons... later apprehended." The two photographs were pictures of petitioner Cane and Glenn Duncan. Mrs. Brown was unable to identify petitioner. When Duncan was brought into the courtroom, Mrs. Brown identified him as one of the robbers.
 
 
 10
 Mrs. Oliver was also shown pictures of Cane and Duncan, which the prosecutor stated were "two photographs which have been stipulated as two of the three persons later picked up on Louisville road." Mrs. Oliver identified the photos as pictures of two of the individuals who robbed the store. She further testified that, earlier that morning, before the trial began, she had been shown an array of photographs of black females, and she identified a picture of Cane as one of the perpetrators of the robbery. The photograph of Cane was taken shortly after his arrest, while he was still attired in female clothing. Cane testified that he was in Louisville, Kentucky the morning of the robbery and that, in response to a telephone call from one of the three perpetrators, borrowed a car, drove to Frankfort, and picked up the trio. According to Cane, when he picked up the three passengers, each was carrying an armload of women's clothing. Moments later, he dropped off one of the three and shortly thereafter was stopped by the police and arrested.
 
 II.
 
 11
 Petitioner first complains that he was denied a fair trial because the court failed to instruct the jury on the presumption of innocence, and the lack of evidentiary value of the indictment. With respect to the absence of a presumption of innocence instruction, the petitioner relies heavily upon Taylor v. Kentucky, 436 U.S. 478 (1978), and Kentucky v. Whorton, 441 U.S. 786 (1979). In Taylor, the Supreme Court held, "on the facts of [that) case," that:
 
 
 12
 [T]he trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment.
 
 
 13
 Taylor, 436 U.S. at 490.
 
 
 14
 For reasons stated hereafter, we are satisfied that, on its facts, Taylor is distinguishable from this case. Moreover, in Kentucky v. Whorton, supra, the court cautioned that Taylor did not establish sweeping new law:
 
 
 15
 In short, the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under Taylor, such a failure must be evaluated in light of the totality of the circumstances--including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors--to determine whether the defendant received a constitutionally fair trial.
 
 
 16
 Whorton, 441 U.S. at 789 (emphasis added).
 
 
 17
 Our assessment of the totality of the circumstances in this case persuades us that the trial court's refusal to instruct on the presumption of innocence did not deprive Cane of a constitutionally fair trial. The facts in this case are sufficiently unlike those in Taylor to lead to a different conclusion concerning the constitutional sufficiency of the court's instructions to the jury. In Taylor, the only evidence that a robbery had occurred was the testimony of the alleged victim. Here, Cane was arrested within thirty-five minutes of the robbery, wearing a coat stolen in the robbery, driving a car loaded with nearly all of the goods taken during the rob bery, and in the company of an admitted participant in the crime. Cane was also identified by a store employee as one of the three persons who robbed the store. While the evidence of Cane's guilt produced at trial was less than overwhelming, the trial was much more than the one-on-one swearing match in Taylor. In addition, unlike the situation in Taylor, the prosecutor did not repeatedly suggest to the jury that Cane's status as a defendant tended to establish his guilt.
 
 
 18
 Cane urges, however, that references to his lifestyle as a transvestite introduced an extraneous matter which could have led the jury to convict him. While there were references throughout the trial to the undisputed fact that the defendant and the persons who robbed the store were all female impersonators, the prosecutor did not unduly or unfairly emphasize Cane's lifestyle or suggest to the jury that he should be convicted because of it. The store was robbed by three men dressed as women. The prosecutor's references to Cane's transvestite lifestyle were limited to facts necessary to prove the state's case.
 
 
 19
 Cane argues that reference to his prior conviction for a felony was another extraneous circumstance which could have caused the jury to convict him. The prosecutor asked the defendant, on cross-examination, whether he had been convicted of a felony. The colloquy was as follows:
 
 
 20
 Q. Mr. Cane, have you been convicted of a felony?
 
 
 21
 A. Yes. No. It was a misdemeanor.
 
 
 22
 Q. You sure?
 
 
 23
 A. A misdemeanor, I think that's what.
 
 
 24
 Q. You sure?
 
 
 25
 A. Yeah. It was a misdemeanor or it was a felony one. I'm not for sure. I don't know.
 
 
 26
 There was no objection registered and no suggestion was made, then or now, that the evidence was inadmissible. The prosecutor did not unduly emphasize the prior conviction, and the trial court properly instructed the jury that the prior conviction was not to be considered as evidence of the defend ant's guilt of the crime charged.
 
 
 27
 During opening argument, the prosecutor read to the jury the indictment which had been filed against him. Cane alleges that the court's failure to instruct the jury that the indictment lacked evidential value denied him due process of law, and also constituted an additional extraneous matter which would cause the jury to convict him. The prosecutor merely read the jury the indictment to inform them of the precise charge that had been laid against the defendant. No special emphasis was placed upon Cane's indicted status, and Cane failed to present any other circumstance which suggested a special need for an instruction concerning the indictment. We conclude no due process denial occurred.
 
 
 28
 We hold that, considering the totality of the circumstances in this case, the trial court's failure to instruct the jury on the presumption of innocence, and that the indictment lacked evidentiary value, did not result in a constitutionally unfair trial.
 
 III.
 
 29
 Petitioner challenges the pretrial and trial procedures by which he was identified as one of the three perpetrators of the robbery. The only witness who was able to identify petitioner as one of the robbers was Mrs. Oliver, an employee at the store.
 
 
 30
 She tesified that when she arrived at the store on the day in question, the three, "ladies I call them," were already in the store although the robbery had not yet begun. After des cribing some of the details of the first moments of the robbery, the witness was shown two photographs which the prosecutor described as "two photographs which have been StipUlated as two of the three persons later picked up on Louisville road," The prosecutor also declared that they were pictures of petitioner Cane and witness Duncan. Mrs. Oliver immediately identified the photograph of Cane as "[the) one [who] had on a gray coat like, gray like coat."
 
 
 31
 Mrs. Oliver further testified that the two pictures were included in a photographic array she had been shown that morning, before the trial began. As we have said, the array consisted of a number of photographs of black females, together with pictures of Cane and Duncan in female attire. Mrs. Oliver testified that she had earlier selected the Cane and Duncan photographs from the array as pictures of two of the three robbers. Duncan and Cane, who are black, were dressed as women in the pictures because the pictures had been taken immediately after they were arrested. The prosecutor, without offering either photograph into evidence, announced that "Exhibit number two [was a photograph] of the defendant, Henry Thomas Cane."
 
 
 32
 Counsel for Cane then objected to the identification procedure being employed by the prosecutor. His objection was considered out of the hearing of the jury, and it was overruled. The prosecutor once again showed the photograph of Cane, attired as a female, to Mrs. Oliver, and the witness identified Cane in the photo and described the details of his participation in the robbery. The following then occurred:
 
 
 33
 [The Prosecutor]: Would you take a look at this individual seated over here at the table with Mr. Judy? Would you, --stand up, Mr. Cane?
 
 
 34
 [The Witness]: That's the boy that put the coat on.
 
 
 35
 [The Prosecutor]: What, how does his appearance differ from what it did that day?
 
 
 36
 [The Witness]: He had a wig on and he had eye shadow on, just like a lady. He looked just like a lady to me. I wouldn't have known the difference until I got over to the police station. That's the only time that I didn't know that they weren't ladies, I thought they were all three ladies,
 
 
 37
 During cross-examination by Cane's counsel,-Mrs. Oliver acknowledged that, while testifying at the preliminary hearing in police court, she had been unable to identify petitioner, who was seated in the courtroom, as one of the robbers, She explained that she had been unable to identify petitioner because "he was so far away from me where I was sitting,1, and because of the angle from which she viewed him. She testified further, however, that after her preliminary hearing testimony was concluded and she left the witness stand,
 
 
 38
 I glanced over at him and recognized him immediately. But he had the hair pulled back, straight back, with a couple of curls on the back of his head and the way he, eyes and the way he looked I recognized him and when I came out I said that was the boy. I recognized him then.
 
 
 39
 When, at the trial, Mrs, Oliver identified the photograph of Cane as a picture of one of the robbers, Cane's counsel objected to the identification on the basis that the photo graphic display from Which the picture of cane was taken could have been suggestive. After the prosecutor assured the judge that the display contained only photographs of black females, as well as photographs of Cane and Duncan attired as women, the trial judge overruled Cane's counsel's objection. Cane's counsel did not request an evidentiary hearing, and did not request that the photographic display be produced. Our standard of review is whether, in light of the totality of the circumstances, the "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Because "reliability is the linchpin in determining the admissibility of identification testimony, " Manson v. Braithwaite, 432 U.S. 98, 114 (1977), if we conclude the identification procedure was unnecessarily suggestive, we must then consider whether there was a very substantial likelihood of irreparable misidentification. See Stovall v. Denno, 388 U.S. 293, 301-02 (1968). The factors considered in determining the reliability of identification testimony, and therefore the probability of mistaken identification
 
 
 40
 include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
 
 
 41
 Manson, 432 U.S. at 114.
 
 A. The Pretrial Identification Procedure
 
 42
 Cane asserts that the suggestive nature of the pretrial identification procedure is illustrated by mrs. oliver's inability to identify him at the preliminary hearing. He contends that Mrs. Oliver's ability to identify him at trial was the product of the following suggestive procedures : Mrs . Oliver saw Cane at the preliminary hearing but could not identify him as one of the three perpetrators; Cane's picture, taken shortly after he was arrested, was placed in a suggestive photographic display which Mrs. Oliver examined the morning of trial; the prosecutor showed Mrs. Oliver Cane's photograph at trial and stated that it showed one of the persons arrested in connection with the robbery; prior to Mrs. Oliver's in-court identification of Cane, he was asked to stand. Additionally, Cane declares that, up until the morning of trial, no one had identified him as one of the perpetrators.
 
 
 43
 Cane claims that the photographic display shown to the witnesses on the morning of trial was suggestive because his photograph was placed, along with Duncan's, in an array other wise composed of females. Cane asserts that, although he is a female impersonator, he has masculine facial characteristics. In addition, the photograph of Cane used in the display was a "mug shot" in which the chain from which Cane's identification number hung was visible, although the number itself had been cut off the bottom of the picture. He argues that the inclusion of his "mug shot" in an array otherwise comprised of females suggested to Mrs. Oliver which photograph to choose.
 
 
 44
 Cane argues that the cumulative effect of Mrs. Oliver seeing him at the preliminary hearing and being shown a-suggestive photographic display the morning of trial, "programmed" her to identify him as the perpetrator of the crime. Cane claims the prosecution's actions stated unequivocally to Mrs. Oliver that he was one of the men who perpetrated the crime. See Foster v. California, 394 U.S. 440, 443 (1969).
 
 
 45
 After an examination of the whole record, and assessing the totality of the circumstances, we conclude that the pretrial identification procedure was not unnecessarily suggestive. It is true that the photo array from which Mrs. Oliver identified cane on the morning of trial was composed of pictures of females, plus pictures of Cane and Duncan. However, Cane and Duncan were dressed as females in the photographs. The arresting officer and the three witnesses to the crime all believed they were dealing with females. Under these circumstances, we do not think it was unnecessarily suggestive for Cane's photograph, attired as a female, to be inserted into a photographic array otherwise composed of females.
 
 
 46
 Mrs. Oliver's testimony at trial refutes Cane's claim that she was "programmed" to identify him. While Mrs. Oliver could not identify Cane from the witness stand at the preliminary hearing, she stated at trial that her inability was not the result of a lack of recognition. Rather, she was initially unable to recognize Cane because of his distance from her, and the angle from which she viewed him. After getting a closer look at Cane, Mrs. Oliver was positive he was one of the robbers.
 
 
 47
 We also conclude, after application of the five factors of Manson v. Brathwaite, supra, that the totality of the circumstances indicate that there was not a significant risk of misidentification. Mrs. Oliver positively recognized Cane at the preliminary hearing. She had at least thirty minutes to view him prior to the initiation of the robbery. Based on Mrs. Oliver's description of the events leading up to the robbery, it is evident that she was attentive to the activities of the perpetrators. While Mrs. Oliver had not given a prior description of Cane, after she had a good look at him at the preliminary hearing she was positive that he was one of the perpetrators of the robbery. Finally, Cane does not allege that the time between the robbery and the confrontation at the preliminary hearing is a significant factor. Since the pretrial identification procedures were not unnecessarily suggestive, and there was little risk of misidentification, we hold that the pretrial identification procedures did not violate Cane's due process rights.
 
 B. The In-Court Identification Procedure
 
 48
 Cane also asserts that the in-court procedure by which mrs. oliver identified him was impermissibly suggestive. Before showing photographs of Cane and Duncan attired as females to each of the three eyewitnesses, the prosecutor stated that the photographs were of two of the three persons apprehended shortly after the crime. Despite being told this, two of the three eyewitnesses, Mrs. Brown and Mrs. White, were unable to identify Cane as one of the perpetrators. Mrs. Oliver, however, indicated that the photograph of cane was that of one off the three perpetrators. At that point, the prosecutor asked Cane to stand and mrs. oliver identified him, in court, as one of the perpetrators.
 
 
 49
 Cane claims this procedure created a substantial risk of misidentification and thereby denied him due process of law. He emphasizes that the photograph of him which was shown to Mrs. Oliver at trial was the same "mug shot" which was included in the photographic array.
 
 
 50
 Unquestionably, the identification procedures utilized by the prosecutor were designed to assist the witnesses' comparison of the disguised appearance of the person arrested immediately after the robbery and the undisguised appearance of Cane in the courtroom. This procedure, particularly the prosecutor's statement to Mrs. Oliver that the photograph marked Exhibit 2 was a "picture ... of the defendant, Henry Thomas Cane," was inappropriately and unnecessarily suggestive.
 
 
 51
 Nevertheless, upon an examination of the whole record, and assessing the totality of the circumstances, we are not persuaded that the in-court identification procedure, although impermissibly suggestive, created any likelihood of misidentification. As previously stated, Mrs. Oliver testified at trial that she was able to identify Cane at the preliminary hearing. She also selected his photograph from an array of photographs she was shown the morning of trial. We hold that the in-court identification procedures, in light of the totality of the circumstances, did not violate Cane's due process rights.
 
 
 52
 Cane also asserts that the in-court identification procedure lacked an independent basis apart from the suggestive pretrial procedures. However, this argument is teneted on the assumption that the pretrial identification procedures were impermissibly suggestive. since we hold that those procedures were not impermissibly suggestive, and did not give rise to a very substantial likelihood of misidentification, Cane's inde pendent basis argument is without merit. Mrs. Oliver's in-court identification had an independent basis; her observation of Cane at the time of the crime.
 
 IV.
 
 53
 Cane contends his due process rights were violated when the trial judge failed to inspect the photographic array used the morning of trial in order to gauge its suggestiveness. However, the Kentucky Court of Appeals held that Cane waived his right to have the trial judge inspect the array when he failed to request an evidentiary hearing. Cane v. Kentucky, 556 S.W.2d 902, 908 (Ky.Ct.App.1977). Absent a showing of cause for the failure to object, and actual prejudice resulting therefrom, that holding is a procedural bar to review of the merits of Cane's argument. Wainwright v. Sykes, 433 U.S. 72 (1977).
 
 V.
 
 54
 In anticipation of our holding on the third issue, Cane argues that, assuming there is a procedural bar as a result of his failure to request an evidentiary hearing, the district court should have held a cause and prejudice hearing under Sykes, supra. This argument is without merit. Cane failed to properly move for an evidentiary hearing at trial. while he initially objected to the photographic array after the trial judge denied his request to inspect the array, Cane did not move for an evidentiary hearing. Cane has failed to allege facts that establish cause as required by Sykes, supra. Thus, our review of his claim is barred. The judgment of the district court, which dismissed Cane's habeas corpus petition, is affirmed.