In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1419

LAWRENCE OWENS,

*Petitioner-Appellant,*

*v.*

STEPHEN DUNCAN, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 7159 — **Thomas M. Durkin**, *Judge*.

ARGUED MARCH 3, 2015 — DECIDED MARCH 23, 2015

Before POSNER, KANNE, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. Lawrence Owens was convicted of first-degree murder in November 2000 after a bench trial in the Circuit Court of Cook County. The judge sentenced him to 25 years in prison; he has almost 11 years of his sentence left to serve. His conviction and sentence were affirmed. He then filed state claims for post-conviction relief that came to naught eight years after having been filed, when the state supreme court declined to hear an appeal from the affir-

mance by the intermediate appellate court of the trial court's denial of Owens' petition for such relief.

He had already filed a petition for federal habeas corpus relief, 28 U.S.C. § 2254, and, the state proceedings having finally wound up, the federal district court adjudicated the petition—and denied it, precipitating this appeal. In it he argues that the state trial judge who convicted him based his decision on evidence that did not exist, thus denying him due process of law in violation of the Fourteenth Amendment. *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) ("one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial," quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)); *Estelle v. Williams*, 425 U.S. 501, 503 (1976) ("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice") (citation omitted); see also *United States v. Moore*, 572 F.3d 334, 341 (7th Cir. 2009) ("Guilt beyond a reasonable doubt cannot be premised on pure conjecture"); *United States v. Garcia*, 439 F.3d 363, 366–68 (7th Cir. 2006) ("The presumption [of innocence] is violated . . . when the jury is encouraged (or allowed) to consider facts which have not been received in evidence").

In 1999, in the City of Markham (current population 12,508), 20 miles south of Chicago, a young man named Ramon Nelson, while riding his bike away from a liquor store, received a fatal blow to the head by a person, presumably male, wielding a wooden stick that may have been a baseball bat. Two eyewitnesses to the murder testified at Owens' trial. Maurice Johnnie identified Owens as the murderer from a

photo array of six persons and from a lineup—although Owens was the only person in the line-up who also was in the photo array, thereby diminishing the probative value of the second identification. The other eyewitness, William Evans, identified Owens as the murderer from the same photo array and a lineup. But at the trial, though Owens was present in the courtroom, Evans twice pointed to a photo of someone else in the photo array as being Owens. There were other discrepancies between the two witnesses' testimony. Evans testified that there had been two assailants, Johnnie that there had been only one. And Evans but not Johnnie testified that Nelson had spoken with the assailants before they assaulted him.

Nelson had crack cocaine on his person when he was killed that appeared to be packaged for individual sale, for the cocaine was in 40 small plastic bags in his coat. No evidence was presented that Owens had known Nelson, used or sold illegal drugs, or had any gang affiliation. If Owens had had any record of involvement in the illegal drug trade, or in gangs, the prosecution would, one imagines, have presented evidence of that involvement; it did not. Also absent was any physical evidence (such as fingerprints on the baseball bat) pointing to Owens as the murderer. Moreover, the murder had taken place at 8:30 p.m. on September 22. Sunset was at 6:47 p.m. that evening, and so it would have been dark ("nautical twilight" as it is called—the hour after sunset— would have ended by 7:47 p.m., see WeatherSpark, "Average Weather On September 22 For Chicago, Illinois, USA: Sun," https://weatherspark.com/averages/30851/9/22/ Chicago-Illinois-United-States (visited March 11, 2015))— three quarters of an hour before the murder took place. Not pitch black, though, and apparently the area in which the

murder was committed had been illuminated to an unde-termined extent by light from street lamps and from a near-by building.

The eyewitness identification (at least by Maurice John-nie) could, we assume despite the substantial doubts that have been raised concerning the reliability of eyewitness ev-idence (see, e.g., National Academy of Sciences, *Identifying the Culprit: Assessing Eyewitness Identification* (2014); Sandra Guerra Thompson, "Beyond a Reasonable Doubt? Reconsid-ering Uncorroborated Eyewitness Identification Testimony," 4 *U.C. Davis L. R.* 1487 (2008); Nancy Steblay et al., "Eyewit-ness Accuracy Rates in Police Showup and Lineup Presenta-tions: A Meta-Analytic Comparison," 27 *Law and Human Be-havior* 523 (2003); Gary L. Wells et al., "Eyewitness Identifica-tion Procedures: Recommendations for Lineups and Pho-tospreads," 22 *Law and Human Behavior* 603 (1998)), have supported a finding beyond a reasonable doubt that Owens had murdered Nelson. But it is highly uncertain whether the judge (for remember that Owens' trial was a bench trial, not a jury trial) thought that *any* of the evidence that had been presented sufficed to dispel reasonable doubt of Owens' guilt. For at the end of the parties' closing arguments the judge said: "I think all of the witnesses skirted the real issue. The issue to me was you have a seventeen year old youth on a bike who is a drug dealer [Nelson], who Larry Owens knew he was a drug dealer. Larry Owens wanted to knock him off. I think the State's evidence has proved that fact. Finding of guilty of murder."

That was *all* the judge said in explanation of his verdict, and it was nonsense. No evidence had been presented that Owens knew that Nelson was a drug dealer or that he want-

ed to kill him (we assume that by "knock him off" the judge meant "kill him"), or even knew him—a kid on a bike. The prosecutor had said in his closing argument that the case "boils down to identification …, how they identified him and where … and in this case identification equals recognition." The judge seems not to have been convinced, for he said nothing to suggest that *he* thought the real issue in the case was identification. If one may judge from what he said, which is the only evidence of what he thought, he thought that Owens' knowledge that Nelson was a drug dealer was *the* fact that dispelled reasonable doubt of Owens' guilt. Otherwise, why would he have called the existence of this fact the "real issue" in the case—the basis therefore of the verdict?

Even if the proper way to determine whether the judge would have convicted Owens had he not mistakenly believed that Owens knew Nelson and knew him to be a drug dealer (and wanted to kill him for that reason) would be to ask the judge what he was thinking when he sentenced Owens almost 14 years ago, that approach would be impossible. The judge died two years ago. *Chicago Tribune Obituaries*, "Joseph M. Macellaio," April 3, 2013, www.legacy.com/obituaries/chicagotribune/obituary.aspx?pid=164012815 (visited March 11, 2015).

On Owens' appeal from his conviction, the state appellate court ruled that the trial judge's belief that Owens knew Nelson to be, or was himself, involved with drugs or gangs was baseless, saying "there was no evidence presented that defendant knew Nelson was dealing drugs, and there was no evidence presented that defendant was involved with gangs or the illegal drug trade." The court also said that "the

reliability of Evans' testimony is severely called into ques-
tion," noting not only Evans' two failures to identify Owens
in the photo array in the courtroom but also his having been
promised by the prosecution probation on two drug charges
in exchange for his testimony. Nevertheless the court ruled
2-1 that the trial judge's error had been harmless because
Johnnie's eyewitness identification of Owens was sufficient
to establish Owens' guilt. The federal district court, in deny-
ing Owens' petition for habeas corpus, added nothing to the
state courts' discussion of the harmless-error issue.

The dissenting judge in the state appellate court pointed
out that the trial judge had "never stated that he relied on
that identification or other properly admitted evidence," so
that "what we do have is a trial judge manufacturing, sup-
plying, and interjecting its own evidence into a trial and then
affirmatively stating on the record that this manufactured
evidence constituted the basis of its verdict." She added that
the error was not harmless because the trial judge had "only
considered unsupported insinuations without any indication
that he was aware of this impropriety." The trial judge
hadn't actually *said* that he'd considered only evidence not
in the trial record, but the only ground for his finding Owens
guilty that he mentioned had no basis in that record (or
elsewhere for that matter).

Not every fact on which a verdict is based must be found
in or inferred from evidence introduced by a party. There is
judicial notice (for example of what time nautical twilight
begins and ends on a given day of the year); there are legis-
lative facts; there are stipulated facts. But there was no factu-
al basis of any sort, in the trial record or elsewhere, for the

judge's finding that Owens knew Nelson, let alone knew or cared that he was a drug dealer. The judge made it up.

In its brief in our court the state argues that the judge's determination that Owens knew Nelson and knew him to be a drug dealer, etc. was a reasonable inference from Owens' having killed him. The argument is that the judge, having (without bothering to say so) concluded that Owens had killed Nelson, was merely remarking that it was a drug-related crime. And indeed it is highly plausible that Nelson was murdered by someone in the drug business. But the critical issue in the case was whether *Owens* had murdered Nelson. The murderer's motive could not have been "the real issue" in the case—as the state keeps stressing, motive is not an element of the crime of murder or of the prosecution's case and was not addressed by Owens' trial counsel either, and the prosecution had made no effort to prove that Owens had known Nelson or was himself in the drug business. If as the judge thought and is plausible in light of what was found on Nelson's person the murderer was a drug dealer, there's a good chance Owens was not the murderer.

The state mistakenly characterizes Owens as contending that "inferring a defendant's motive entitles petitioner to a new trial if that inference is not fully supported by the evidence at trial." Had the judge said that he'd found the defendant guilty beyond a reasonable doubt on the basis of the evidence presented at the trial, and merely added that "by the way my guess is that Owens knew Nelson and killed him for reasons related to their both being drug dealers," Owens would have no case, because the judge's observation would not have been the basis of Owens' conviction. In fact the evidence of Owens' guilt was as we've seen far from

conclusive, yet its uncertainty did not engage the judge's attention. The judge appears to have been thoroughly confused—and likewise the state when it argues in its brief in our court that the judge's inference that Owens killed Nelson for drug-related reasons "was arguably a reasonable inference from the" fact that "Nelson had forty bags of crack cocaine on him at the time of the attack." Nelson's being a drug dealer could not by itself have supported any such inference about the identity of his murderer unless more had been known about the murderer than the prosecution was able to establish.

Nonetheless, to repeat, we can assume that if the evidence of Owens' guilt had been overwhelming, the judge's conjecture that Owens knew Nelson and knew him to be a drug dealer and that Owens was (as the judge's comment implied) himself involved in the drug trade (why else would he want to kill Nelson?) could be disregarded as goofy but harmless. But evidence of Owens' guilt was not overwhelming. Had it been, it is unlikely that the judge would have described Owens' supposed (but by only the judge) knowledge of Nelson's involvement in the drug business as "the real issue" in the case. What may have made it the "real issue" to the judge was the scantiness of the actual evidence of Owens' guilt.

It remains to consider whether the judge's blunder satisfies the test for whether a state court's error, though of constitutional magnitude (in this case, because the judge based a verdict of guilty on ungrounded conjecture), can escape being deemed "harmless" when challenged in a federal habeas corpus proceeding. The test "is whether the error had substantial and injurious effect or influence in determining the

jury's verdict. Under this standard, habeas [corpus] petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas [corpus] relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations and internal quotation marks omitted). Owens has satisfied this standard. Given that the entire case pivoted on two shaky eyewitness identifications, Owens might well have been acquitted had the judge not mistakenly believed that Owens had known Nelson to be a drug dealer and killed him because of it. As we explained in *Jones v. Basinger*, 635 F.3d 1030, 1053–54 (7th Cir. 2011), the question that *Brecht* requires us to answer is not whether a reasonable trier of fact could have rendered the verdict that it (in this case he) did, but whether the trier of fact committed an error that had a substantial malign influence on the verdict. The trial judge's singling out as the only explanation for the verdict a "fact" having no evidentiary support, and declaring it the "real issue" in resolving the case, had to have had such an influence.

We are mindful that only clearly established violations of a defendant's constitutional rights permit us to reverse a state court decision challenged in a federal habeas corpus proceeding. *Nevada v. Jackson*, 133 S. Ct. 1990 (2013). But there's no question that the right to have one's guilt or innocence adjudicated on the basis of evidence introduced at trial satisfies that exacting standard. That is clear from the Supreme Court decisions in *Holbrook*, *Taylor*, and *Estelle*, and our own *Garcia* and *Moore* decisions, from all of which we quoted earlier. It's true that we know of no case identical to this one—unsurprisingly, given the combination of weak proof with a verdict based on groundless conjecture. But

identity can't be required. The Supreme Court has made clear in the cases we've cited and quoted from that a judge or a jury may not convict a person on the basis of a belief that has no evidentiary basis whatsoever. Just imagine that the judge in our case had said "I know there's no evidence of guilt, but I also know that prosecutors in the City of Markham *never* prosecute an innocent person." The defendant would be entitled to relief in a habeas corpus proceeding even though that precise statement had never been uttered by a judge before.

And so we reverse the judgment denying Owens relief and give the state 120 days in which to decide whether to retry him. If it does not decide within that period to retry him, he must be released from prison.