**Michael ZOBEL, Petitioner–Appellant,**

v.

**Arthur TATE, Warden, Respondent–Appellee.**

No. 00–3989.

United States Court of Appeals,
Sixth Circuit.

Feb. 11, 2002.

KENNEDY, Circuit Judge.

Petitioner Michael Zobel appeals the denial of his petition for a writ of habeas corpus. Zobel claims that he was denied his Sixth Amendment right to a jury trial when the trial court judge, during voir dire, made certain statements implying that Zobel's indictment by a grand jury placed Zobel "in trouble" and on unequal "footing" with the State at trial. Because we conclude that any error committed by the trial judge was harmless, we affirm the district court's denial of the writ.

I.

Michael Zobel was indicted by a Tuscarawas County Grand Jury for one count of Intimidation, in violation of Ohio Revised Code § 2941.143.[1] Zobel pleaded not guilty, and his case proceeded to trial. During voir dire, the trial judge made certain statements that could be construed as weakening the presumption of innocence. First, in explaining the indictment process to the prospective jurors, the judge stated:

> [A]t least seven of nine Grand Jurors who are voting after hearing witnesses testify, vote either to publicly charge an individual, or to not return any public charge. That public charge is an Indictment ... And that Indictment is the public charge that at least seven of nine citizens in the community have found that there is enough evidence to believe that the person named in the offense probably committed the crime that is set forth in the Indictment.

Before KENNEDY and DAUGHTREY, Circuit Judges; BELL,* District Judge.

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1. Zobel allegedly threatened a potential witness in a separate criminal proceeding against Zobel for robbery. Zobel had been charged with the robbery of Susan Rainelli, a woman with whom he maintained a romantic relationship. Zobel allegedly threatened to physically harm Rainelli and her four children if she testified against him in the robbery case. Rainelli also claims that Zobel grabbed her by the throat and hit her about the head to make his point.

(J.A. at 336.) Subsequently, defense counsel, Gerry Latanich, questioned the prospective jurors about their understanding of the presumption of innocence. He began to ask prospective jurors whether they would be able to hear the evidence without the notion that Zobel was in "a bit of a hole" already. The trial judge then interrupted counsel, stating:

> Folks, the point that [counsel] is making is a valid one but I want to give you a little bit more information as a backdrop to answer his questions. Mr. Zobel did not drop in out of the atmosphere in this case. . . . [T]he prosecution witnesses are the only ones who appear before the Grand Jury. The Grand Jurors hear only one version of what happened and their decision is after having listened to the evidence of these witnesses—is there enough evidence to believe that Mike Zobel in this case probably committed the crime of intimidation. Well folks, let me tell you that the likelihood of people not being indicted is less than people being indicted when you have witnesses who are believed by the Grand Jury that testify before them and no other opposition testimony is presented. That's just the real world that we find ourselves in. So this presumption of innocence which I've talked about is important. It's as important as anything but you must understand that presuming Mike Zobel to be innocent doesn't mean you have to banish from your mind the fact that he's sitting here charged with a felony crime that's serious, and that at least seven of nine Grand Jurors voted that there was enough evidence he probably committed this crime. . . . [T]his presumption of innocence does not mean that Mike Zobel shouldn't occupy a position in your mind that he's in trouble in this case. He's been charged.

(J.A. at 387–89.) Defense counsel then approached the same issue a different way, asking the potential jurors whether they thought that Zobel started the case "on equal footing" with the State. Again, the trial judge interrupted the questioning, and the following exchange took place:

> *Court:* I'm going to ask, Gerry, if you'll ask the question just a little differently. . . . [I]t is not whether Mr. Zobel stands on equal footing with the State. Will each juror require the State to meet its burden of proof beyond a reasonable doubt. That's the key here. That in my opinion is the key. I don't think he's on equal footing with the State at this point. He's been indicted.
>
> *Mr. Latanich:* I understand. But my point is that if jurors—for the record, if jurors believe a little bit in the back of their minds that he just might be guilty, then obviously they're not following the presumption of innocence because they are to presume at the present time.
>
> *Court:* I disagree with you. I think that the fact that he is indicted will allow jurors to conclude that at least seven of nine people felt there was enough evidence that he probably committed the crime which is the standard for indicting people in this county, in this state. The critical—the critically important issue is not withstanding that, that at least seven of nine folks felt Mike Zobel probably committed this crime, will you be scrupulous in requiring the State to prove guilt on each element of this crime beyond a reasonable doubt? . . . Yes, I'm satisfied that they can give credence to the presumption of innocence.
>
> *Mr. Latanich:* For the record then are you stopping me from asking whether or not he's—
>
> *Court:* I think that would be misleading, Gerry, and that's why I'm telling you

you made your record, you wanted to do it and I said you can't.

(J.A. at 390–92.)

Following the presentation of evidence, the trial judge instructed the jury about the presumption of innocence:

> The fact that Mr. Zobel has had filed against him an Indictment charging him with intimidation creates no presumption of guilt against him. On the contrary, the law presumes that everyone charged with a crime is innocent unless or until his or her guilt is established beyond a reasonable doubt. Mr. Zobel in this case is entitled to this presumption of innocence in your consideration of the evidence unless and until you believe beyond a reasonable doubt that the evidence so establishes his guilt.

(J.A. at 752). The jury returned a verdict of guilty. Zobel was sentenced to an indefinite term of incarceration of four to ten years.

Zobel filed a direct appeal with the Fifth District Court of Appeals in Ohio. In his appellate brief, Zobel raised eight assignments of error, including the following:

> V. THE TRIAL JUDGE ERRED BY IMPROPERLY INFERRING TO THE JURY THAT THE DEFENDANT–APPELLANT PROBABLY COMMITTED THE CRIME IN VIOLATION OF THE RIGHT OF AN ACCUSED TO BE PRESUMED INNOCENT.

(J.A. at 59.) Zobel argued that the statements made by the trial judge during voir dire violated the "long standing tenet of the criminal justice system that every defendant is presumed innocent of a crime unless proven guilty under the strict requirements of trial." (J.A. at 59.) Zobel did not expressly couch this claim in the guarantees of the Sixth Amendment to the U.S. Constitution. Rather, Zobel cited only to the Ohio Revised Code, Section 2901.05(A), which codifies the burden of proof in criminal trials. (J.A. at 59.) However, in his Memorandum in Support of Jurisdiction, filed with the Court of Appeals, Zobel claimed that the judge's remarks violated a "fundamental ten[et] of criminal law" recognized by the United States Supreme Court in *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) and *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

The Court of Appeals overruled each of Zobel's eight assignments of error. As to the fifth assignment of error, the court found certain portions of the judge's statements during voir dire to be "extremely troublesome and improper as a matter of law." (J.A. at 892.) The court stated that the judge's remarks were "blatantly inconsistent with [the] presumption [of innocence]," and that "the trial court erred in stating that [Zobel] was not on an 'equal footing with the State at this point. He's been indicted.'" (J.A. at 892.) The court also found error in the judge's statement that the jury could conclude there was enough evidence to convince seven out of nine people that Zobel "probably committed" the crime because he had been indicted. Such statement was "unnecessary and prejudicial." (J.A. at 892.) Nonetheless, the court went on to find that several of the judge's other remarks and instructions to the jury clearly conveyed the requirement that the prosecution prove guilt beyond a reasonable doubt. Thus, the court concluded, the trial court's error during the voir dire was purged by the instructions as a whole and the error was rendered harmless. In reaching this conclusion, the court did not cite any precedent, nor refer to the federal harmless error doctrine.

Zobel next filed a petition for post-conviction relief in Ohio state court, consisting of only an ineffective assistance of counsel

claim. Shortly thereafter, he filed a notice of appeal with the Ohio Supreme Court, appealing the ruling of the Fifth District Court of Appeals in his direct review case. Zobel's petition for state post-conviction relief was dismissed as untimely by the Tuscarawas County Court of Common Pleas. The Ohio Supreme Court denied Zobel leave to appeal in his direct case and dismissed the appeal as not involving any substantial constitutional question.

Zobel then filed this petition for federal habeas corpus relief with the district court, raising only one ground for relief: "Due process violations created by legally incorrect and prejudicial statements by the court." (J.A. at 9.) The matter was referred to a magistrate judge, who recommended that the petition be dismissed. The magistrate agreed with the state court of appeals that the trial judge's comments during voir dire were erroneous. The magistrate also agreed. however, that the error was harmless. The district court adopted the magistrate's report and recommendation and denied Zobel's petition for a writ of habeas corpus. Zobel appeals.

## II.

■■■ We review the district court's denial of habeas corpus relief de novo. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Because Zobel filed his petition for a writ of habeas corpus on September 10, 1998, after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective, the provisions of the AEDPA govern this case. The AEDPA limits the ability of federal courts to grant writs of habeas corpus where a state court has considered the federal claim on its merits. The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has since clarified that

> [Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

▬ Both the magistrate judge and the district court found that Zobel's constitutional claim had been adjudicated on the merits in the state court, and that the provisions of § 2254(d) therefore limited the federal court's review of Zobel's claim. The magistrate judge stated, "[a]lthough the state appellate court did not specifically cite federal precedent, it appears that the court used the harmless [error] analysis laid forth in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)." (J.A. at 952.) The district court similarly concluded, "it appears clear that the court used and correctly applied the harmless-error analysis outlined in *Brecht.*" (J.A. at 993.)

This conclusion is inexplicable, given the opinion of the Ohio appellate court. The appellate court did not refer to the Constitution, the Sixth Amendment, the federal harmless error doctrine, nor any case applying a constitutional analysis. The court did not cite *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), or *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the most relevant Supreme Court harmless error cases. The appellate court simply stated that the judge's remarks were erroneous, but that "the jury instructions as a whole purged said error rendering it harmless and properly conveyed to the jury the appropriate legal presumptions and burden of proof." (J.A. at 893.) The district court's conclusion that the state court properly applied the *Brecht* standard is especially curious given that *Brecht* adopted a more stringent standard (from the petitioner's perspective) for harmless error review only for federal habeas corpus cases, not for direct review cases. In *Brecht,* the Court faced the question of whether to apply the *Chapman* standard for harmless error ("the court must be able to declare a belief that it was harmless beyond a reasonable doubt") or the *Kotteakos* standard for harmless error (the petitioner must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict") in a federal habeas case. The Court held that, given the nature and purposes of federal collateral review of state court decisions, the interests of comity and federalism, and the state's interest in finality of convictions, the more stringent *Kotteakos* standard should apply. Thus, federal habeas petitioners are "not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht,* 507 U.S. at 637.

Of course, the Ohio Court of Appeals was directly reviewing Zobel's conviction, making *Brecht* inapposite. State courts are still required to apply the *Chapman* "harmless beyond a reasonable doubt" standard when considering constitutional errors. *See Bulls v. Jones,* 274 F.3d 329, 334–35 (6th Cir.2001). Following the enactment of the AEDPA, the *Brecht* standard continues to apply in the Sixth Circuit. *See id.* If a petitioner is able to show, in federal court, that he can meet the more demanding *Brecht* test for harmless error, then "he will surely have demonstrated that the state court's finding that the error was harmless beyond a reasonable doubt ... resulted from an unreasonable application of *Chapman.*" *See id.* (citing *Nevers v. Killinger,* 169 F.3d at 371–72 (6th Cir.1999)).[2]

---

2. Although *Nevers'* definition of "unreasonable" was overruled by the Supreme Court's decision in *Williams v. Taylor,* the Sixth Circuit has clarified that the *Nevers* holding with respect to the continued viability of *Brecht* is

Unfortunately, in this case, it is not clear what standard the state court applied. Hence, it was improper for the district court to give deferential treatment to the state court opinion in reliance on the "unreasonable application" standard of § 2254(d). Rather, the district court should have made an independent determination of whether the error was harmless under the *Brecht* standard, without regard to the state court's conclusion. *See Gilliam v. Mitchell,* 179 F.3d 990, 995 (6th Cir.1999) (*Brecht* standard applies to federal habeas review, even where the federal habeas court is the first court to consider harmless error question); *Mitzel v. Tate,* 267 F.3d 524, 533 (6th Cir.2001) (same). The *Brecht* standard, rather than the *Chapman* standard, applies in all federal habeas proceedings, even if the state court did not apply the *Chapman* test on direct review. *See generally Bains v. Cambra,* 204 F.3d 964, 977 (9th Cir.2000) (federal district courts conducting independent review should apply *Brecht* standard regardless of what, if any, harmless error analysis the state court conducted).

■■ Despite the district court's use of the wrong standard, we conclude that the court reached the proper result. We therefore affirm. Under the *Brecht* standard, a federal court should not grant habeas relief unless the court finds that the error had a substantial and injurious effect or influence in determining the jury's verdict. That is, the petitioner must be able to show actual prejudice resulting from the error. In this case, any error that was committed by the trial judge was substantially mitigated by other correct statements regarding the burden of proof in a criminal trial. The judge's erroneous remarks were surrounded by admonishments to the potential jurors about the need to be vigilant in requiring the prose-

cution to prove each element of the crime beyond a reasonable doubt. During voir dire, and shortly prior to making the statements at issue, the judge stated:

> Now, Mr. Zobel has entered a plea of not guilty when he appeared before the judge who arraigned him, and he is presumed to be innocent of the crime. Notwithstanding the fact that he has been publicly charged by a Grand Jury, he is presumed to be innocent of the crime as all of us are who find ourselves within the confines of the United States of America. And the Government, the State, the Prosecuting Attorney's office which is the agent of the State in this trial, is required by law to prove guilt, that charge of intimidation and each element of it beyond a reasonable doubt, before Mr. Zobel could be found guilty of that crime.... And of course you all are prospective jurors to be questioned concerning your ability to be fair and impartial not only to Mr. Zobel but to the State of Ohio; to come to this trial with an open mind, no preconceived ideas or conclusions about Mr. Zobel's guilt or lack of guilt other than you will give him the presumption of innocence to which he is entitled.... There is no obligation on the part of Mr. Zobel to prove that he is innocent because he is presumed by law to be innocent.

(J.A. at 338–40.)

The trial judge also indicated that prospective jurors would be dismissed if they were unable to give the defendant the presumption of innocence and require the State to meet its burden of proof. (J.A. at 345.) The judge also repeatedly stated that the "key" issue and the "critically important" question was whether, notwithstanding the fact that Zobel had been indicted, the potential jurors would require

still good law. *See Bulls,* 274 F.3d at 335 n.    1.

the State to meet its burden of proving each element of the offense beyond a reasonable doubt. (J.A. at 387, 390–91.) Moreover, the judge explained the indictment process to the potential jurors, and specifically told them that grand jurors only hear evidence from the prosecution, making it likely that a prosecutor would be successful in obtaining an indictment. (J.A. at 387–89.) This statement removed much of the "sting" of the remarks in question. After the evidence had been presented, the judge gave a proper instruction regarding the burden of proof, set forth above. Most importantly, that instruction stated that despite the fact that Zobel had been indicted, the charge "creates no presumption of guilt against him. On the contrary, the law presumes that everyone charged with a crime is innocent unless or until his or her guilt is established beyond a reasonable doubt." (J.A. at 752.) This instruction was provided to the jury in writing before deliberations. In light of the proper comments concerning the burden of proof made by the judge before and after the erroneous remarks during voir dire, as well as the correct instructions on the law issued by the judge prior to deliberations, we conclude that Zobel has failed to meet the *Brecht* standard. He is unable to show that he was actually prejudiced by the erroneous comments, or that the comments had a substantial and injurious effect or influence in determining the jury's verdict. Any constitutional error committed by the trial judge in making the remarks at issue was harmless.

### III.

For the foregoing reasons, the district court's denial of the writ is affirmed.