[Cite as *State v. Blenman*, 2021-Ohio-3076.]

# IN THE COURT OF APPEALS OF OHIO
# ELEVENTH APPELLATE DISTRICT
# ASHTABULA COUNTY

STATE OF OHIO,

          Plaintiff-Appellee,

    - v -

GARY LYNN BLENMAN, II,

          Defendant-Appellant.

CASE NO. 2020-A-0046

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2019 CR 00336

---

# O P I N I O N

Decided: September 7, 2021
Judgment: Affirmed in part, reversed in part, and remanded

---

*Colleen M. O'Toole,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Robert S. Wynn,* 7 Lawyers Row, P.O. Box 121, Jefferson, OH 44047 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Gary Lynn Blenman, II, appeals the September 4, 2020 judgment entry of the Ashtabula County Court of Common Pleas sentencing him to an indefinite term of imprisonment. For the reasons set forth herein, the judgment is affirmed in part, reversed in part, and remanded.

{¶2} Jerome C. Walker II ("Jerome") owns a house located on Plymouth Ridge Road in Ashtabula, Ohio. Jerome wanted to do some remodeling so he and his parents, Mr. and Mrs. Walker, had been going to the property daily to work on the construction

projects. On the morning of May 9, 2019, as Mr. and Mrs. Walker were pulling in the driveway, they noticed a grey pickup truck, still running and with its tailgate down, backed up to the back patio of the property. Various items of the Walkers, which had been left in the house when they left the evening before, were laid out in the yard and on the patio. Additionally, the door to the garage was open and the screen to a window had been removed; all doors and windows had been secured the night before. Mr. Walker jumped out of the vehicle that Mrs. Walker was driving and went into the house. He testified that he heard movement in the basement. Mrs. Walker called 911 and then Jerome.

{¶3} When Mr. Walker emerged from the house, a man, later identified as Gary Blenman, was standing near the grey truck. Mr. Walker advised him not to run or leave the property. Mr. Blenman approached Mrs. Walker and stated that he was not leaving and that he was there because he was interested in purchasing the property.

{¶4} Officer Pinney arrived. The Walkers told him the ladder, tiles, and remote-controlled helicopter found in Mr. Blenman's truck were their items, and that several of their personal items (e.g., shoes and a knife set) were missing. In talking with the police, Mr. Blenman first said he was interested in purchasing the property and later that he was there because he worked on houses. He stated that before driving his truck to the back of the house, he had knocked on the door and received no reply. He also said that he went to the neighbor across the street and inquired as to the occupancy of the subject property. The police investigated but were unable to get in contact with the neighbor. The grey truck was registered to Mr. Blenman.

{¶5} The police arrested Mr. Blenman. He was indicted on Count One, Burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree, and Count Two, Theft,

2

Case No. 2020-A-0046

in violation of R.C. 2912.02(A)(1), a felony of the fifth degree. Mr. Blenman pleaded not guilty, and the case proceeded to trial. Mr. Blenman testified in his defense that he was there to work on the roof after receiving a phone call the night before. He also testified that he had recently purchased the tiles and the helicopter himself, and that the ladder was his. Mr. Blenman's father testified that the folding ladder found in the truck belonged to his son.

{¶6} The jury found Mr. Blenman guilty on both counts. The trial court ordered him to serve a minimum term of eight years and a maximum term of 12 years in prison on Count One and 12 months in prison on Count Two, to be run concurrently.

{¶7} Mr. Blenman now appeals, assigning three errors for our review. The first states:

> {¶8} There was not presented any evidence sufficient to support a finding that the property "is" the temporary or permanent habitation of anyone, and the conviction is against the manifest weight of the evidence.

{¶9} In *State v. Jenks,* 61 Ohio St.3d 259 (1991), the Supreme Court of Ohio held that, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* at paragraph two of the syllabus, citing *Jackson v. Virginia,* 443 U.S. 307 (1979).

{¶10} R.C. 2911.12(A)(2), of which Mr. Blenman was convicted, provides in pertinent part:

3

{¶11} (A) No person, by force, stealth, or deception, shall do any of the following:

{¶12} * * *

{¶13} (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶14} Under this assignment of error, Mr. Blenman argues that the state did not present evidence that the subject property was the permanent or temporary habitation of the Walkers. Ohio courts have adopted an expansive definition of the phrase "occupied structure." Mr. Blenman argues Ohio has not similarly broadly defined "permanent or temporary habitation." He correctly notes that while other subsections of R.C. 2911.12(A) do not add the "permanent or temporary" language, subsection (2), of which he was convicted, has this additional requirement. The state argues that because "permanent or temporary habitation" is a subset of the general definition of "occupied structure," whether or not the structure was permanently or temporarily inhabited is immaterial. Mr. Blenman argues the state is incorrect on this point. We agree.

{¶15} The phrase "permanent or temporary habitation" is not defined in the revised code for R.C. 2911.12(A)(2). "If a term is not defined in the Revised Code, then the common, everyday meaning of the term governs." *State v. Martin*, 12th Dist. Butler No. CA2015-05-085, 2016-Ohio-453, ¶11, citing *State v. White*, 29 Ohio St.3d 39, 40 (1987). As defined by Black's Law Dictionary, a "habitation" is "[a] dwelling place; a domicile," and a domicile "requires bodily presence plus an intention to make the place one's home."

{¶16} R.C. 2909.01(C) defines "occupied structure" as used in R.C. 2911.12(A):

4

{¶17} (C) "Occupied structure" means any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

{¶18} (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

{¶19} (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

{¶20} (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

{¶21} (4) At the time, any person is present or likely to be present in it. R.C. 2909.01(C).

{¶22} Thus, the state is correct that "permanent or temporary habitation" is a subset of the more generalized term "occupied structure." However, contrary to the state's argument, it is because "permanent or temporary habitation" is but one of four subsets of "occupied structure" that the two are not interchangeable. By the inclusion of the "permanent or temporary habitation" language, R.C. 2911.12(A)(2) is clearly intended to further clarify the definition of "occupied structure" to be applied to that offense. The phrase "permanent or temporary habitation" which was added in subsection (A)(2) and not (A)(1) and (A)(3) cannot simply be ignored.

{¶23} Moreover, the cases the state cites in support of its argument are distinguishable, either applying a different subsection of R.C. 2911.12(A) or are cases in which the prosecution presented evidence that the structure was a permanent or temporary habitation. *State v. McCort,* 5th Dist. Muskingum No. CT2016-0019, 2017-Ohio-590 (applying R.C. 2911.12(A)(3)); *State v. Green,* 18 Ohio App.3d 69 (10th Dist.1984) (noting that the use of the word "maintained" in R.C. 2909.01 is significant;

5

critically, however, R.C. 2911.12(A)(2) does not use the word "maintained" but rather states the unequivocal "is" indicating a different definition of "occupied structure" was intended); *State v. Bock,* 16 Ohio App.3d 146 (12th Dist.1984) (the state presented evidence that showed the structure was inhabited); *State v. Calderwood,* 194 Ohio App.3d 438 (8th Dist.2011) (applying R.C. 2911.12(A)(3)).

{¶24} During trial, the state did not present any evidence that the subject property was either permanently or temporarily inhabited. The record shows that Mr. and Mrs. Walker reside on Adams Avenue. And while Jerome testified that he owned the subject property, he was "at home" on Adams Avenue when he received the call from his mother about the intruder. Furthermore, Jerome testified that he was not staying the night at the subject property and the furniture in the subject property was not set up, but was bunched together as if it had just been moved in. The state presented no evidence that the subject property was permanently or temporarily inhabited. Thus, we cannot agree that the state presented sufficient evidence to support a conviction on the count of burglary in violation of R.C. 2911.12(A)(2).

{¶25} Although the evidence offered at trial was insufficient to support Mr. Blenman's conviction for burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, the evidence was sufficient to convict him of burglary in violation of R.C. 2911.12(A)(3), a third-degree felony. And even though a jury instruction was not given upon the lesser included offense of third-degree burglary under R.C. 2911.12(A)(3), Mr. Blenman is not prejudiced by entry of a conviction for that offense because the jury was instructed upon and considered all of the elements of the lesser included offense of third-

degree burglary and found that those elements were proved beyond a reasonable doubt. *See State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶30.

{¶26} The modification of a verdict to a lesser included offense without granting a new trial is expressly permitted by Crim.R. 33(A)(4), which states in pertinent part:

{¶27} A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

{¶28} * * *

{¶29} (4) That the verdict is contrary to law. *If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified*[.] (Emphasis added.)

{¶30} Here, the habitation element of second-degree burglary, upon which we find the evidence was insufficient, has no effect upon the remaining elements of the offense. No additional fact-finding is necessary to determine whether Mr. Blenman is guilty of felony-three burglary. *Petit, supra.*

{¶31} Accordingly, Mr. Blenman's first assignment of error has merit as it pertains to the sufficiency of the evidence and moot as it pertains to the manifest weight of the evidence.

{¶32} His second states:

{¶33} Defense counsel provided ineffective assistance of counsel to appellant when he did not exclude Nicholas Walker, a retired police chief, from the panel, and his paltry examination of Walker was not designed to probe in support of defense contentions but rather served to smooth Walker's way onto the panel.

{¶34} Under this assignment of error, Mr. Blenman argues his trial counsel was ineffective for failing to excuse Retired Police Chief Walker.

7

{¶35} In a claim of ineffective assistance of counsel, Ohio courts apply the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *State v. Bradley,* 42 Ohio St.3d 136 (1989), at paragraph two of the syllabus. Under the *Strickland* test, the defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Strickland, supra,* at 687. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley, supra,* at paragraph three of the syllabus. This is a highly deferential review. *Strickland, supra,* at 689. A reviewing court must presume that a properly licensed attorney is competent. *Id.*

{¶36} Moreover, as it pertains to voir dire, the Supreme Court of Ohio has "consistently declined to 'second guess trial strategy decisions' or impose 'hindsight views about how current counsel might have voir dired the jury differently.'" *State v. Mundt,* 115 Ohio St.3d 22, 2007-Ohio-4836, ¶63, quoting *State v. Mason,* 82 Ohio St.3d 144 (1998). It has also recognized that "counsel is in the best position to determine whether any potential juror should be questioned and to what extent." *State v. Murphy,* 91 Ohio St.3d 516, 539 (2001).

{¶37} Nothing in the record indicated that Juror Walker would be biased or unfavorable for the defense. He stated that nothing from his law enforcement experience would keep him from being a fair and impartial juror, and that his experience would not lead him to take the word of law enforcement witnesses over other witnesses. When defense counsel asked if he could be fair and impartial, Juror Walker stated, "I hope. That's the way I've been my whole life." When asked whether he could remain unbiased,

8

Juror Walker answered he could. Mr. Blenman's argument implies that Juror Walker was lying; however, nothing in the record supports this finding.

{¶38} Accordingly, Mr. Blenman cannot show that trial counsel's performance was deficient or prejudicial; his second assignment of error is without merit.

{¶39} His third states:

{¶40} The trial court committed prejudicial error and denied appellant a fair trial due to the structural errors of proceeding with a Jury Trial of appellant under the current pandemic emergency concerns and precautions, and violated his rights to due process under Article [sic] Section 16 of the Ohio Constitution, and the Sixth and Fourteenth Amendments of the United States Constitution.

{¶41} Due to the health concerns surrounding the COVID-19 pandemic that was active at the time of Mr. Blenman's trial, the court made several modifications to the proceedings in an effort to protect all individuals involved. Masks were required to be worn when not speaking, social distancing between all individuals was implemented, and the courtroom was frequently cleaned. The court made these measures known to the prospective jurors. Jury selection was done in four rounds, so that less people were in the courtroom at one time. And for the purpose of making the trial public, live stream video equipment was set up so that the public could view the trial from a different room, thus allowing more space between individuals.

{¶42} Under this assignment of error, Mr. Blenman argues that the trial court's handling of the proceedings during the COVID-19 pandemic "created an atmosphere of concern among prospective jurors" and that the totality of the concerns and practices utilized made a fair and reasonable trial not possible. He asserts that the jury pool will be less representative during a pandemic, due to the exclusion of individuals at high risk of severe health effects from COVID-19.

9

{¶43} Crim.R. 24(F) states that either side "may challenge the array of petit jurors on the ground that it was not selected, drawn or summoned in accordance with law. A challenge shall be made before the examination of the jurors pursuant to division (B) of this rule and shall be tried by the court." As Mr. Blenman is raising this issue for the first time on appeal, he has waived the issue.

{¶44} Even if the argument had not been waived, however, it would fail on the merits. The United States Supreme Court in *Duren v. Missouri*, 439 U.S. 357 (1979), held that "to establish a prima facie violation of the fair-cross-section requirement, a defendant must show (1) the group purported to be excluded is a 'distinctive' group in the community; (2) the representation of the group in venires from which juries are picked is not fair and reasonable in relation to the number of those persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process." *Id.* at 364.

{¶45} Mr. Blenman has not demonstrated any of these elements. There is no evidence that the jury pool or jury panel underrepresented any group or was not a reasonable cross-section of the community. There is no evidence that all jurors over the age of 65 or with any particular medical condition were excused; at the direction of the court, only those with concerns about COVID-19 were excused. And of the jury pool in this case, only one such potential juror was excused due to their concerns.

{¶46} Furthermore, in its instructions for holding trials during the COVID-19 pandemic, the Supreme Court left to "'the sound discretion of the local judiciary how to best manage the daily challenges that the Covid-19 pandemic ha[d] foisted on local courts." *State v. Freeman,* 2nd Dist. Greene No. 2020-CA-33, 2021-Ohio-734, ¶21,

10

quoting *State ex rel. McArtor v. Kovack*, 158 Ohio St.3d 1472, 2020-Ohio-1489, ¶14, (Kennedy, J., dissenting). The trial court took the recommended and commonly practiced precautions to protect all individuals involved, while adhering to the rules and abiding by the rights of Mr. Blenman, albeit in a manner different from pre-pandemic procedure.

{¶47} Accordingly, Mr. Blenman's third assignment of error is without merit.

{¶48} In light of the foregoing, we remand this case with instructions for the trial court to vacate Mr. Blenman's burglary conviction in violation of R.C. 2911.12(A)(2), enter a judgment of conviction on the lesser included offense of burglary in violation of R.C. 2911.12(A)(3), and resentence Mr. Blenman on the burglary count. Otherwise, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2020-A-0046