**[Cite as *State v. Blair*, 2021-Ohio-3370.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28904 |
| | : | |
| | : | Trial Court Case No. 2019-CRB-5484 |
| v. | : | |
| | : | (Criminal Appeal from |
| MICHAEL BLAIR | : | Municipal Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of September, 2021.

. . . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JAMES S. SWEENEY, Atty. Reg. No. 0086402, 285 South Liberty Street, Powell, Ohio 43065
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Michael Blair appeals from his conviction for misdemeanor assault in the Dayton Municipal Court. He challenges the trial court's refusal to give a self-defense instruction and the court's requiring him to wear personal protective equipment (PPE), including a paper gown over his clothes. We conclude that neither constituted error, so we affirm.

## I. Factual and Procedural Background

{¶ 2} On October 30, 2019, Blair was charged with misdemeanor assault. After a series of pretrials and continuances due to the COVID-19 pandemic, the case proceeded to a jury trial in August 2020. This was the first jury trial in Dayton Municipal Court since the pandemic shut down the court. The trial court explained to the jury at the beginning of the trial that people in the courtroom would be wearing different PPE based on their individual risk factors. Blair was required to wear a white semi-opaque paper gown over his suit, along with a face mask and face guard.

{¶ 3} At trial, the State presented evidence that Blair assaulted Kenneth Ebbing in the Montgomery County jail, where they were both inmates in the same cell. A video recording of the incident was presented at trial. The video showed Blair near his bunk when Ebbing approached and appeared to say something to Blair. Blair straightened up and immediately began punching Ebbing. Ebbing did not appear to fight back but tried to shield himself with his hands. Blair kicked Ebbing onto the floor and stomped on him multiple times. Blair then walked away from a bloodied Ebbing. Eventually, a corrections officer removed Ebbing from the cell. The officer, Charles Whitaker, testified that he had later asked Blair why he had attacked Ebbing, and Blair had responded: "[D]id you see

his tattoos? I was tired of it." (Tr. 195.)

{¶ 4} Blair testified in his own defense. He said that Ebbing had made several "racial comment[s]" to him that made him "angry." (*Id.* at 206-207.) Blair said that he also saw that Ebbing had tattooed on his body "1488," which Blair believed meant "all hail Hitler," and a swastika, which Blair said he knew was a "racial tattoo." (*Id.* at 207-208.) Blair said that he felt threatened, so he reacted.

{¶ 5} The trial court denied Blair's request for a self-defense jury instruction, finding no evidence that he acted in self-defense.

{¶ 6} The jury found Blair guilty of assault as charged, and the trial court sentenced him to 180 days in jail to be served concurrently with an unrelated prison sentence.

{¶ 7} Blair appeals. Blair filed a motion to stay his sentence, which the trial court granted, and thus Blair's appeal is not moot.

## II. Analysis

{¶ 8} Blair assigns as error the trial court's refusal to give a self-defense instruction and the court's requiring him to wear PPE, particularly the paper gown.

### A. Self-defense instruction

{¶ 9} In his first assignment of error, Blair alleges that the trial court abused its discretion by not giving a self-defense instruction to the jury.

{¶ 10} "We review a trial court's refusal to submit a requested jury instruction for 'an abuse of discretion under the facts and circumstances of the case.' " *State v. Taylor*, 2d Dist. Montgomery No. 28668, 2020-Ohio-6854, ¶ 10, quoting *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶ 11} R.C. 2901.05(B)(1) establishes that a person may act in self-defense:

If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense.

"To warrant an instruction on self-defense, R.C. 2901.05(B)(1) mandates that there must be evidence presented that supports the conclusion that the defendant used force to defend" himself or herself. *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 20. " 'To support a claim for self-defense, a defendant must demonstrate that he acted out of fear, or he felt that his life was threatened.' In instances where less than deadly force is used, the defendant need only show a fear of bodily harm * * *." (Citations omitted.) *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.), quoting *State v. Crawford*, 2d Dist. Montgomery No. 22314, 2008-Ohio-4008, ¶ 26. *See also State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997) (holding that to establish self-defense, a defendant must introduce evidence showing that (1) he was not at fault in creating the violent situation, (2) he had a bona fide belief that he was in imminent danger of bodily harm, and (3) he did not violate any duty to retreat or avoid the danger). Self-defense requires evidence that the actor had both an objective and subjective belief that force was necessary. "[T]he defendant must have had reasonable grounds to believe, and an honest belief, that such force as was used was necessary to protect himself." *State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶ 18.

{¶ 12} Here, the video recording of the confrontation showed that Ebbing approached Blair slowly and not in an aggressive manner. Ebbing did not do anything

suggesting that he was going to attack or harm Blair. Blair justified the attack by saying that he felt threatened by Ebbing, who had made several racist comments, which made Blair angry, and who had several racially offensive tattoos. But the only conduct of Ebbing's that Blair mentioned was that Ebbing had "walked up to [him]." (Tr. 213.) There was simply no evidence to support an objective belief that Blair was in imminent danger of bodily harm. Also, Corrections Officer Whitaker testified that Blair told him that he had assaulted Ebbing because he was tired of Ebbing's tattoos, saying nothing about having to defend himself or feeling threatened:

A. I had—Mr. Blair had stopped me and said—I kind of—I asked him, I said so what was that. He said—he looked at me and he said did you see his tattoos? I was tired of it.

Q. Ok. And is that all he said?

A. Yes.

Q. He didn't mention anything about—nothing about being concerned for his safety. Nothing about him being attacked?

A. No.

* * *

Q. Anything about him being threatened?

A. No.

(*Id.* at 195-196.)

{¶ 13} There was no evidence to support Blair's claim that he acted out of fear of bodily harm, and one cannot use physical force to defend against psychological harm. In the physical confrontation here, Blair was the physical aggressor, lashing out first. While

his anger at Ebbing may have been understandable, Blair cannot justify his failure of self-control with a claim of self-defense. The trial court reasonably concluded that there was insufficient evidence to support a self-defense instruction.

**{¶ 14}** The first assignment of error is overruled.

## B. Having to wear PPE

**{¶ 15}** In his second assignment of error, Blair alleges that the trial court violated his constitutional rights by ordering him, over his objection, to wear PPE in the courtroom, particularly the paper gown.

**{¶ 16}** The United States Supreme Court has explained that "[c]entral to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). But the Court cautioned that "[t]his does not mean, however, that every practice tending to single out the accused from everyone else in the courtroom must be struck down." *Id.* A reviewing court must "look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Id.* at 572.

**{¶ 17}** Requiring a defendant to wear PPE in a courtroom is not inherently prejudicial. Contrary to Blair's assertion, wearing a paper PPE gown is not akin to wearing

jail clothing. When a defendant is required to appear before a jury in jail clothes, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Estelle v. Williams,* 425 U.S. 501, 504-505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (finding such a practice unconstitutional because no "essential state policy" was served). We do not think that the same is true of PPE, but even if it were, requiring PPE was justified by an essential State interest specific to Blair's trial. A practice that is inherently prejudicial may be permitted, the Supreme Court has said, "where justified by an essential state interest specific to each trial." *Holbrook* at 569. Blair's trial was the first jury trial in Dayton Municipal Court since the COVID-19 pandemic shut down the court. The court explained to the jury at the beginning of the trial why it was requiring people to wear PPE in the courtroom:

> The court takes public health and safety concerns very seriously. It has implemented aggressive policies to prevent the risk of infections of COVID 19 for jurors and other court viewers. The court is following the guidance provided by the Ohio Department of Health and the Department of Public Health Dayton and Montgomery County. We would like to assure that the court has done everything it can to safeguard your health during your time in the courthouse. You may see some persons in the courtroom wearing personal protective equipment also known as PPE, in addition to facial coverings. The Ohio Department of Health has different recommendations for PPE depending on health risk factors and personal circumstances. The PPE that the court has provided to you as a juror is in the current compliance with the recommendations by the Ohio Department of Health.

(Tr. 2-3.)

{¶ 18} Practices that are not inherently prejudicial must be approached on a case-by-case basis. *Holbrook* at 569. Having concluded that wearing PPE is not inherently prejudicial, we must next determine whether Blair was actually prejudiced by having to wear a white paper PPE gown, along with a face mask and face guard. We do not think so. Everyone in the courtroom, including the jurors, was required to wear PPE. Although Blair may have been the only one wearing a gown, we see no reason to think that this affected the juror's judgment. We do not think that the PPE gown was the "distinctive, identifiable attire" of an inmate that may have affected a juror's judgment. And even if it were, the jurors knew that Blair had been an inmate, because the assault occurred inside the Montgomery County Jail while Blair was being held there. Given the trial court's PPE explanation, it is more likely that the jurors simply thought that Blair's health or other personal circumstances made his wearing the gown prudent.

{¶ 19} Blair says that there is nothing in the record to establish why only he would need to wear a gown. There is no evidence that, for example, Blair was exposed to COVID-19 or that he was at a higher risk of exposing anyone to COVID-19. But it was already well-known at the time of the trial that the insidious nature of the coronavirus is such that one can be infected and capable of spreading it before symptoms begin to manifest. The trial court could have reasonably inferred that being confined in the relatively small space of a jail with many other people made Blair's risk of infection higher. Regardless, given all the uncertainties, including the unknowns about the virus at the time of the trial, we cannot say that the trial court acted unreasonably by requiring Blair to wear the PPE that it did.

{¶ 20} Ultimately, though, requiring Blair to wear any PPE was at worst harmless error, because the evidence of his guilt was overwhelming and the evidence of self-defense was lacking. The video recording of the incident was pretty clear evidence of what had happened. Self-defense is, after all, a confession and avoidance defense, and Blair tacitly admitted in his testimony that he had assaulted Ebbing.

{¶ 21} The second assignment of error is overruled.

### III. Conclusion

{¶ 22} We have overruled the two assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Troy B. Daniels
James S. Sweeney
Hon. Colette E. Moorman