[Cite as *State v. Boucher*, 2022-Ohio-978.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 21CA0054 |
| | : | |
| STEVEN T. BOUCHER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking Municipal Court, Case No. 21TRC00946

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      March 24, 2022

APPEARANCES:

For Plaintiff-Appellee:

J. MICHAEL KING
Newark Law Department
40 West Main Street
Fourth Floor
Newark, OH 43055

For Defendant-Appellant:

SIERRA SEE
BURKETT & SANDERSON, INC.
73 N. Sixth St.
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Steven T. Boucher appeals from the July 1, 2021 Judgment Entry of Conviction of the Licking Municipal Court. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following evidence is adduced from the record including appellee's bill of particulars, a suppression hearing on April 15, 2021, and a jury trial on July 1, 2021.

{¶3} This case arose on February 2, 2021, when Trooper Coffland of the Ohio State Highway Patrol was sitting stationary in a parking lot off 30th Street in the town of Heath. Coffland observed a green Saturn Ion operating at a very high rate of speed proceeding south on 30th Street. Coffland followed the vehicle and noted the registration. Coffland observed the vehicle turn right onto State Route 79 without signaling and he paced the vehicle's speed at 54 miles per hour. The vehicle also appeared to be weaving within its lane.

{¶4} Coffland checked the vehicle registration which came back to a female, although a male was driving. Coffland observed the white male driver was not wearing a seat belt. The vehicle turned left onto Irving Wick Drive with Coffland following. The registered owner of the vehicle lived on Irving Wick Drive. The vehicle made several other turns. Coffland did not initiate a traffic stop but turned around on River Oaks Drive and proceeded back onto Irving Wick Drive westbound.

{¶5} The same green sedan then passed Coffland eastbound at a high rate of speed. Coffland activated his radar and determined the vehicle's speed was 63 miles per hour in a 35-mph zone.

{¶6} Coffland caught up to the vehicle as it pulled into a residential driveway on Irving Wick Drive East. Coffland initiated a traffic stop and pulled in behind the vehicle.

{¶7} Coffland approached the driver—appellant--as he exited the sedan. Coffland asked appellant for his operator's license, registration, and proof of insurance. Appellant said these items were in the house, along with his ID. Coffland did not permit appellant to enter the house to retrieve the items.

{¶8} Coffland detected a very strong odor of an alcoholic beverage emanating from appellant's person and noted his bloodshot, glassy eyes. Coffland asked appellant why he was driving so fast and appellant replied, "No reason." Coffland told appellant he observed him driving for some time before the stop and asked him again why he was speeding. Appellant responded, "Because I was drinking and I have priors." Coffland told appellant he could smell the alcohol on his breath and asked if appellant had an ID; appellant then provided ID and was identified as Steven Boucher. Appellant further stated he was picking up pizza to bring home.

{¶9} Coffland prepared to administer standardized field sobriety tests on a flat surface but appellant said he would not complete them; appellant affirmatively stated he refused to perform field sobriety tests. Coffland asked to check appellant's eyes and appellant refused.

{¶10} Coffland arrested appellant for O.V.I. and Mirandized and searched him. Appellant asked if he could smoke a cigarette but the trooper refused because appellant lied about his ID card and would not cooperate with field sobriety tests. Appellant then stated he just got off probation for a prior O.V.I. and he knows how the process works.

{¶11} Appellant's vehicle was towed. During the inventory search, a small amount of marijuana and paraphernalia were found on the driver's-side floorboard. Coffland then located approximately 48 grams of "mushrooms" in the glove compartment.[1]

{¶12} Appellant was transported to the Licking County Jail. After he was read the contents of the BMV 2255, appellant refused to submit to any chemical tests of his blood, breath or urine.

{¶13} Appellant was charged by Uniform Traffic Ticket (UTT) with two counts of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) and 4511.19(A)(2). The UTT notes appellant has three prior O.V.I. convictions dated 2019, 2016, and 1995. Appellant was also charged with two counts of driving under suspension pursuant to R.C. 4510.14 and 4510.037(J). Appellant was charged with one count of speeding pursuant to R.C. 4511.21 and one count of failure to wear a seat belt pursuant to R.C. 4513.263(B)(1).[2]

{¶14} Appellant entered pleas of not guilty. On March 3, 2021, he filed a motion to suppress all evidence stemming from the traffic stop and subsequent investigation, arguing the trooper lacked reasonable suspicion to stop him. Appellee filed a memorandum contra. The matter proceeded to evidentiary hearing on April 15, 2021. On April 16, 2021, the trial court filed a judgment entry overruling appellant's motion to suppress.

---

[1] Copies of the citations for the minor misdemeanors are in the record but not the outcome of the charges, if any. Nor is there any further reference to the mushrooms.
[2] Appellant was also cited for one count of possession of drug paraphernalia pursuant to R.C. 2925.141 and one count of possession of marijuana pursuant to R.C. 2925.11(C)(3), both minor misdemeanors.

{¶15} The case proceeded to trial by jury and appellant was found guilty as charged.[3] The trial court sentenced appellant to a jail term of one year plus three days, to be served consecutively.

{¶16} Appellant now appeals from the judgment entry of his convictions and sentence.

{¶17} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶18} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

{¶19} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN FAILING TO DECLARE A MISTRIAL WHEN THE TRIAL COURT'S MASK POLICY RESULTED IN UNDUE PREJUDICE AGAINST THE DEFENDANT IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION."

{¶20} "III. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE ENTIRETY OF THE CONTENTS OF A BMV RECORD TO BE ADMITTED WHEN ITS PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE AGAINST DEFENDANT-APPELLANT."

**ANALYSIS**

I.

{¶21} In his first assignment of error, appellant argues the trial court should have granted his motion to suppress. We disagree.

---

[3] The minor misdemeanor traffic offenses were tried to the Court and appellant was found guilty.

{¶22} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶23} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion,

whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶24} In the instant case, appellant argues the trooper lacked reasonable and articulable suspicion for the traffic stop. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶25} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-

emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.
>
> *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶26} Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996-Ohio-431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA 95, 2009-Ohio-3339, 2009 WL 1916902, ¶ 14, citing *State v. McCormick,* 5th Dist.

No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, 2013 WL 1209351, ¶ 60.

{¶27} In the instant case, the trooper stopped appellant after observing him traveling at a high rate of speed for the second time, clocking his speed with radar at 63 mph. Appellant concedes that "had Mr. Boucher been the one speeding, it would have provided the officer with a constitutionally sufficient basis to effectuate the initial detention of Mr. Boucher as even a minor equipment violation may provide such grounds." Brief, 7, citing *Dayton v. Erickson,* 76 Ohio St.3d 3 (1996). He claims there was no evidence he was speeding, implying appellee failed to prove his vehicle was the one Coffland clocked on radar after the second time he observed the vehicle traveling at a high rate of speed.

{¶28} Appellant's argument rests upon an implication that the trial court should not have believed Coffland's testimony. In ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Kopp*, 5th Dist. No. 16-CA-96, 2017-Ohio-4428, 93 N.E.3d 199, ¶ 21, *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist. 1994), internal citation omitted. We are charged with independently determining, without deference to the trial court's conclusion, whether the facts before us on the record meet the appropriate legal standard. *State v. Levengood*, 5th Dist. No. 2015AP090053, 2016-Ohio-1340, 61 N.E.3d 766, ¶ 29, citing *State v. Fisher,* 5th Dist. Fairfield No. 13CA35, 2014-Ohio-3029, 2014 WL 3372484, ¶ 44, internal citation omitted.

{¶29} Upon our review of the record, we find evidence in the record, in the form of the trooper's testimony, supporting the traffic stop. Coffland testified that he initially observed appellant speeding when he was sitting in a parking lot; he did not confirm the vehicle's speed with radar at that time but it was obvious to him that the vehicle was traveling above the posted speed limit. The trooper then followed the vehicle for a brief period, observing a turn-signal violation and weaving within lanes, but he did not initiate a traffic stop. When he ran the vehicle's registration, it came back to an owner on Irving Wick Drive and the vehicle turned onto Irving Wick Dive. In the trooper's candid estimation, his initial observations were enough to pique his interest in the vehicle, but he decided against a traffic stop; the vehicle turned into a housing area "and he turned he used his turn signal those two times when he made those turns and I just let him go. Obviously I was interested in that vehicle but I let him go. I continued on Irving Wick." T. Supp., 13.

{¶30} Coffland proceeded on his way until he reached an area where he could make a U-turn. He proceeded back toward Heath when he noticed a vehicle approaching him at a high rate of speed and passed him; Coffland activated his rear radar and clocked the vehicle at 63 mph. When the vehicle passed him, he realized it was the dark green sedan he observed earlier. Coffland now turned around to follow the vehicle and caught up to it as it was pulling into a residential driveway.

{¶31} Appellant implies that the Coffland may have clocked the wrong vehicle after the second observation of speeding, but Coffland followed the vehicle into appellant's driveway. Coffland noted the vehicle's license plate both times, remembering the vehicle had U.S. Air Force emblems on the trunk and license-plate holder. Appellant

implies that if Coffland observed the first speeding incident and the turn-signal violation as he testified, he should have stopped appellant at that time, therefore throwing his entire testimony into question. Brief, 6. Our review of the record indicates Coffland was candid in admitting he was interested in the vehicle, but when it entered the residential neighborhood he declined to make a traffic stop. It was only when he observed the same vehicle speeding again that he acted. In the context of Coffland's entire testimony, his initial decision to let the driver go in the residential neighborhood makes his testimony about ensuing events more credible, not less. But as noted supra, the trial court was in the best position to determine Coffland's credibility; our role is to determine whether sufficient facts are in the record to support the trial court's conclusion.

{¶32} Under the totality of the circumstances, the trooper had reasonable and articulable suspicion to stop appellant's vehicle. The trial court did not err in overruling appellant's motion to suppress, and appellant's first assignment of error is therefore not well-taken.

II.

{¶33} In his second assignment of error, appellant argues the trial court violated his due process rights in requiring him to wear a mask during voir dire. We disagree.

{¶34} Appellant's arguments are premised upon assertions of facts not contained in the record. He claims that he was unvaccinated at trial and it was the trial court's policy to require all unvaccinated people to wear masks, thereby treating him differently and prejudicing him in the eyes of the jury. The trial court's mask policy is not in the record. In his brief, appellant states the following without citation to the record:

* * * *.

During the voir dire portion of Mr. Boucher's trial, he was wearing a mask. After the voir dire process, Counsel requested a mistrial citing the mask policy and that Mr. Boucher had been unduly prejudiced to the jury pool. The Court denied this request but did allow Mr. Boucher to be mask free for the rest of the trial.

\* \* \* \*.

Brief, 10-11.

{¶35} We have reviewed the trial record to determine how masks were addressed. At page 33, the prosecutor during voir dire stated, "Okay I am about done let's talk about COVID for a bit. As the judge indicated I am fully vaccinated and so I am not required to wear a mask at this point in time nor are you unless you feel uncomfortable, but I guess my questions are if you go to the other courtroom you have the partitions just like we do here and there is a partition in front of the judges bench and in between the jury and the witnesses. Does anyone have any concerns about COVID in general? \* \* \* \*."

{¶36} One juror responded she had asthma and it might be difficult to wear a mask all day; the juror indicated she did have a mask and asthma inhaler with her. T. 34. At page 37, defense trial counsel began voir dire and stated, \* \* \* \* "With that said I haven't done very many jury trials wearing a bandit mask either so this is somewhat new to me and I am going to try to do the best that I can to make sure that you can make out what it is that I am saying." These are the only references to masks that we find in the record through the end of voir dire; we find no reference to the court's mask policy, appellant's vaccination status, whether appellant wore a mask, or any motion for mistrial at the conclusion of voir dire.

{¶37} The relevant conversation may have taken place off the record. At page 95, the following statement was made by defense trial counsel after the luncheon recess outside the presence of the jury:

* * * *.

The third thing is the thing that we did discuss in chambers and that is the issue with respect to Mr. Boucher and masks at the start of the trial. At the court's instruction I had Mr. Boucher in a mask because he is not vaccinated. The court pointed out to the jurors that there were issues with respect to vaccinations and how we were treating them and as a result Mr. Boucher was wearing a mask during voir dire and the court graciously allowed him to take the mask off when we started the trial, but my position is that the damage was done and that a mistrial should have been declared once we were in front of the jury in that manner. So we would renew our request that has already been denied for the mistrial * * *.

{¶38} Appellee responded that there was no prejudice to appellant, nor any inference of guilt, because some jurors wore masks and some didn't. The trial court denied the motion for mistrial, noting there is "equal prejudice both ways" because sometimes the vaccinated are prejudiced against the unvaccinated and vice-versa, but no prejudice arose against appellant because he was masked during voir dire. T. 97-98.

{¶39} Appellant now equates the wearing of a mask during voir dire with compelling a defendant to wear prison attire at trial, asserting both courtroom procedures lead to an inference of guilt by the jury. Appellant also argues that treating unvaccinated

defendants differently than vaccinated defendants violates his right to equal protection. As appellee points out, appellant points to no relevant authority in support of either assertion.

{¶40} On March 9, 2020, Governor Mike DeWine declared a state of emergency (Executive Order 2020-01D) in response to the COVID-19 pandemic. A few weeks later, on March 20, 2020, the Ohio Supreme issued a document entitled, "Guidance to Local Courts COVID-19 Public Health Emergency." The Supreme Court followed up with a series of guidance bulletins regarding how courts should responsibly maintain access to justice and has assisted trial courts with implementing remote technology and other costs associated with the pandemic. *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶ 5.  Further, "[d]uring this public-health emergency, a judge's priority must be the health and safety of court employees, trial participants, jurors, and members of the public entering the courthouse. *Id.* at ¶ 8. In its instructions for holding trials during the COVID-19 pandemic, the Supreme Court left to "'the sound discretion of the local judiciary how to best manage the daily challenges that the Covid-19 pandemic ha[d] foisted on local courts." *State v. Blenman*, 11th Dist. No. 2020-A-0046, 2021-Ohio-3076, 177 N.E.3d 1039, ¶ 46, citing *State v. Freeman,* 2nd Dist. Greene No. 2020-CA-33, 2021-Ohio-734, 2021 WL 943694, ¶ 21 and *State ex rel. McArtor v. Kovack*, 158 Ohio St.3d 1472, 2020-Ohio-1489, 143 N.E.3d 508, ¶14, (Kennedy, J., dissenting).

{¶41} Assuming *arguendo* that the trial court in the instant case required unvaccinated persons in the courtroom to wear masks; that appellant was unvaccinated; and that the trial required him to wear a mask during voir dire only, we find no evidence of prejudice or implication of guilt.

{¶42} The Second District Court of Appeals examined a similar argument in *State v. Blair*, 2nd Dist. Montgomery No. 28904, 2021-Ohio-3370, in which a trial court's Covid policy required the defendant to wear personal protective equipment (PPE) including a white semi-opaque paper gown over his suit, a clear face guard, and a mask. *Id.* at ¶ 2. The requirements in the courtroom were different for other individuals based upon their "individual risk factors." *Id.* The defendant argued that requiring him to wear PPE was akin to requiring him to wear jail attire because he was treated differently and the jurors might infer guilt. Upon review, however, the Second District Court of Appeals drew a sharp contrast between measures to protect public safety versus visible reminders of a defendant's incarcerated status that might leave an impression of guilt:

> The United States Supreme Court has explained that "[c]entral to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.' " *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), quoting *Taylor v. Kentucky*, 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). But the Court cautioned that "[t]his does not mean, however, that every practice tending to single out the accused from everyone else in the courtroom must be struck down." *Id.* A reviewing court must "look at the scene presented to jurors and determine whether

what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Id.* at 572.

Requiring a defendant to wear PPE in a courtroom is not inherently prejudicial. Contrary to Blair's assertion, wearing a paper PPE gown is not akin to wearing jail clothing. When a defendant is required to appear before a jury in jail clothes, "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Estelle v. Williams,* 425 U.S. 501, 504-505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (finding such a practice unconstitutional because no "essential state policy" was served). We do not think that the same is true of PPE, but even if it were, requiring PPE was justified by an essential State interest specific to Blair's trial. A practice that is inherently prejudicial may be permitted, the Supreme Court has said, "where justified by an essential state interest specific to each trial." *Holbrook* at 569. * * * *.

*State v. Blair*, 2nd Dist. Montgomery No. 28904, 2021-Ohio-3370, ¶ 16-17.

{¶43} Practices that are not inherently prejudicial must be approached on a case-by-case basis. *Id.,* citing *Holbrook* at 569. We find nothing inherently prejudicial in requiring certain persons in a courtroom to wear masks, and when we consider whether

appellant suffered actual prejudice from doing so, we conclude he did not. The mask requirement applied equally to jurors and counsel, as demonstrated by the asthmatic juror and defense trial counsel in his "bandit mask." We find no evidence in the record that appellant's mask during voir dire affected any juror's judgment or led them to any conclusion regarding appellant's vaccination status, much less his guilt.

{¶44} We find no evidence for appellant's premise that the mask policy was inherently prejudicial, or that he sustained any prejudice therefrom. Appellant's second assignment of error is overruled.

III.

{¶45} In his third assignment of error, appellant argues the trial court erred in admitting the entire contents of the certified copy of his BMV driving record into evidence. We disagree.

{¶46} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.* Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶47} During trial but outside the presence of the jury, appellant anticipated appellee would offer into evidence a certified copy of his complete driving record from the BMV. (Appellee did offer this item of evidence as Exhibit 3.) Appellant offered to stipulate to a prior O.V.I. conviction and to his prior O.V.I. license suspension to avoid introduction of the driving record; appellant noted he objected to the content of the BMV record but not to its admissibility. T. 94-95. Appellant further stated he would stipulate to appellant's Exhibit 3, but only to its authenticity. T. 95.

{¶48} The trial court was not required to permit appellant's stipulations and deny admittance of the driving record. Appellant was charged with violations of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2); a prior conviction within 20 years is an element of R.C. 4511.19(A)(2). Appellee was required to present evidence of appellant's prior O.V.I. conviction beyond a reasonable doubt; a trial court does not err in allowing appellee to admit evidence of a prior conviction as such was an element of the offense for which appellee bears the burden of proof. *State v. Holland*, 5th Dist. Stark No. 2011 CA 00104, 2012-Ohio-486, ¶ 20, citing *State v. Hoover,* 123 Ohio St.3d 418, 2009–Ohio–4993. As appellee points out, the jury was further required to find that appellant had two prior convictions pursuant to R.C. 4510.21 (failure to reinstate operator's license) within the previous three years.

{¶49} Although appellant later sought to strike appellee's Exhibit 3, the request was overruled. The jury was instructed not to consider appellant's prior convictions for the purpose of determining guilt in the instant case. (T. 159, 166). The jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559

N.E.2d 1313 (1990), paragraph four of the syllabus. Appellant has not pointed to any evidence in the record that the jury failed to do so in this case.

{¶50} Even assuming *arguendo* the trial court erred in admitting the entire contents of the driving record, we find no evidence of material prejudice to appellant. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in the admission of evidence. *Sage*, supra, 31 Ohio St.3d 173.

{¶51} Appellant's third assignment of error is overruled.

## CONCLUSION

{¶52} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, Earle, J., concur.